UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| A. RICHARD SCHUSTER, *individually and on behalf of all others similarly situated*, Plaintiff, | ) ) ) ) ) ) | |
| v. | ) ) | C.A. No. 1:19-CV-11679-ADB |
| ENCORE BOSTON HARBOR, WYNN MA, LLC, and WYNN RESORTS, LTD., Defendants. | ) ) ) ) ) ) | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO REMAND**

**I.  INTRODUCTION**

Plaintiff A. Richard Schuster ("Plaintiff") brought this action in the Middlesex Superior Court seeking damages against Encore Boston Harbor, Wynn MA, LLC, and Wynn Resorts, Ltd. (collectively "Encore") under various legal theories arising out of Encore's disregard of Massachusetts Gaming laws, failure to abide by the published Rules of Blackjack, and inexplicably failing to dispense coins to its slot customers.  On August 5, 2019, Wynn MA, LLC and Wynn Resorts, Ltd. removed the case pursuant to the Class Action Fairness Act of 2005 ("CAFA"). *See* 28 U.S.C., § 1332(d).[1]  Encore has failed to meet its burden of establishing a reasonable probability that the amount in controversy in this case exceeds the sum or value of $5 million, exclusive of interest and costs, as is required by CAFA for removal.  *See* 28 U.S.C., § 1332(d)(2).  Accordingly, for the reasons stated herein, this case must be remanded to the Middlesex Superior Court, and this Court should award the Plaintiff his costs and reasonable attorney's fees incurred as a result of Encore's improvident removal.

---

[1] Defendant "Encore Boston Harbor" did not consent to removal.

1

## II. FACTUAL BACKGROUND[2]

The facts relevant to removal are fairly straightforward. Encore is a luxury resort casino that opened to the general public on June 23, 2019. *See* CLASS ACTION COMPLAINT AND JURY DEMAND ("C.") [Dkt. 1-2], at ¶ 14. This lawsuit raises two general legal issues relating to casino gambling at Encore. First, Plaintiff alleges that Encore unlawfully pays a natural "blackjack" at odds of 6 to 5, instead of odds of 3 to 2, as required by the Rules of Blackjack published by the Massachusetts Gaming Commission.[3] *Id.*, at ¶ 2. For example, if a player places a wager of $50.00 and is dealt a "blackjack," he or she should be paid $75.00 (i.e., a payout ratio of 3:2) in accordance with Massachusetts law. *Id.*, at ¶ 19. Instead, however, Encore only pays the player $60.00 (i.e., a payout ratio of 6:5) if they are dealt a "blackjack." *Id.*, at ¶ 21. The second issue raised in the Complaint is that Encore's ticket redemption machines used by slot players to cash out their winnings (or remaining slot balances) do not pay coins. *Id.*, at ¶ 4. As stated in the Complaint:

> At the conclusion of any wager, the players can "cashout" any unused credits remaining on the slot machine. When the player hits the "cashout" button, the machine prints a ticket that can be redeemed at ticket redemption machines positioned throughout the casino. These ticket redemption machines look like ATM machines. Once the ticket is inserted, the machine is supposed to dispense cash to the customer in the amount of the ticket. The ticket redemption machines, however, only pay out whole dollar amounts, without change, and without instruction on how to redeem the balance . . . All unclaimed funds are retained by Encore.

*Id.*, at ¶¶ 33-37.

---

[2] Because jurisdiction is based on the facts that existed at the time of removal, Plaintiff will recount the factual background as stated in the initial Class Action Complaint and Jury Demand, which was operative at the time of removal. Plaintiff filed his First Amended Class Action Complaint and Jury Demand on August 28, 2019, after removal to this Court.

[3] A natural "blackjack" is legally defined as "an ace and any card having a point value of 10 dealt as the initial two cards to a player or a dealer except that this shall not include an ace and a ten point value card dealt to a player who has split pairs." *See* C., at ¶ 18, n. 3.

On July 15, 2019 Plaintiff filed suit in the Middlesex County Superior Court. *See id*. Plaintiff alleged four causes of action arising out of this conduct, including: (1) breach of contract; (2) unjust enrichment; (3) promissory estoppel; and (4) conversion/theft. *Id*. The lawsuit was filed on behalf of the Plaintiff and all others similarly situated. *Id*. All three defendants were served in-hand: Wynn MA, LLC and Wynn Resorts, Ltd. were served on July 15, 2019; Encore Boston Harbor was served on July 16, 2019. *See* EXECUTED RETURNS OF SERVICE [Dkts. 1-5, 1-6 and 1-7]. Because Encore was open for less than one month at the time the Complaint was filed, damages were limited. Although no *ad damnum* was included in the Complaint, the Plaintiff attempted to estimate damages nonetheless. *See* MASS. GEN. LAWS ch. 231, § 13B. Using estimates and statistical assumptions, the Complaint pled that Encore was enriched in the estimated amount of $85,440.00 each day.[4] *See* C., at ¶ 3. Despite these estimated damages being nowhere near $5 million, defendants Wynn MA, LLC and Wynn Resorts, Ltd. filed a Notice of Removal on August 5, 2019, nonetheless. *See* NOTICE OF REMOVAL [Dkt. 1]. Defendant Encore Boston Harbor did not consent to the Notice of Removal. *See id*. The Plaintiff now moves to remand to state court. *See* 28 U.S.C., § 1447(c).

**III.  ARGUMENT**

 **A.  ENCORE HAS THE BURDEN OF ESTABLISHING FEDERAL JURISDICTION**

The removal statute, 28 U.S.C., § 1441, is strictly construed against removal. *See Rossello-Gonzalez v. Calderon-Serra*, 398 F.3d 1, 11 (1st Cir. 1995). Deference is generally given to the plaintiff's choice of forum. *See Amoche v. Guar. Trust Life Ins. Co.*, 556 F.3d 41, 43 (1st Cir. 2009). The Court should be "mindful that (1) [it] has a particular responsibility to

---

[4] This is just an extremely rough estimate and should not be deemed as a judicial admission. Damages could be more or could be less. Plaintiff expressly stated in the Complaint that this was an estimate, and the Plaintiff reserves the right to calculate damages after discovery and before trial.

3

police the border of federal jurisdiction, (2) Plaintiff is the master of his complaint, and (3) the removal statute should be strictly construed against removal." *Youtsey v. Avibank Mfg., Inc.*, 734 F. Supp. 2d 230, 237 (D. Mass. 2010). For this reason, where the complaint does not contain specific damage allegations, the burden is on Encore to demonstrate a "reasonable probability" that the amount in controversy exceeds $5 million. *Amoche*, 556 F.3d at 43. The defendants must meet this burden at the time of removal. *Id.*, at 51. Failing this burden, this Court lacks jurisdiction, and remand to state court is required.

B. <u>ENCORE HAS FAILED TO SHOW A REASONABLE PROBABILITY THAT THE AMOUNT IN CONTROVERSY EXCEEDS $5 MILLION</u>

Encore has not sufficiently demonstrated that the amount in controversy is greater than CAFA's $5 million jurisdictional minimum. Encore relies exclusively on the Civil Action Cover Sheet filed in state court. According to state law, this is a non-binding <u>estimate</u> of damages that is used only to determine whether the Superior Court Department has jurisdiction over the case. *See* MASS. GEN. LAWS ch. 212, § 3A (cover sheet used to determine whether "the estimated damages will be consistent with the civil money damage limits of the [Superior] court"). Vitally, given its limited purpose, the civil action cover sheet "shall not constitute a judicial admission nor may it be admitted in evidence." *See* MASS. SUPERIOR CT. R. 29(4). Encore attempts to do just that.[5]

Encore's reliance on the Civil Action Cover Sheet alone is insufficient to meet its heavy burden for removal. *See, e.g., Williams v. Litton Loan Servicing*, No. 1:10-cv-11866-MLW, 2011 WL 3585528, at *6 (D. Mass. Aug. 15, 2011); *Baker v. Sears Holding Corp.*, 557 F. Supp.

---

[5] The Civil Action Cover Sheet filed by Plaintiff in state court has served its purpose of showing that the amount in controversy necessary to proceed in Superior Court (i.e., $25,000.00) was satisfied. It was not filed for any other purpose, including an admission as to damages, or for any purpose related to these proceedings in Federal Court, as there was no indication that the Federal Court had jurisdiction over the lawsuit.

4

2d 1208, 1215 (D. Colo. 2007). While a civil action cover sheet may be considered, it is not binding as to the amount in controversy, especially when contradicted by the allegations made in a complaint. *Williams*, at * 6; *see also Baker v. Equity Residential Management, L.L.C.*, 996 F. Supp. 2d 1 (D. Mass. 2014) (remanding case to state court where defendant failed to meet its burden of showing the amount in controversy was met, notwithstanding contradictory damage estimates contained in the civil action cover sheet). In *Williams*, for example, the removing defendant cited plaintiff's civil action cover sheet listing $70,000.00 as a basis for removal because the defendant believed that these damages, after accounting for treble damages and attorneys' fees, would exceed the $75,000.00 amount in controversy requirement. *Williams*, at * 6. The Court remanded the case to state court because although the civil action cover sheet listed $70,000.00, the complaint referenced just an $18,000.00 debt that was at issue in the case. *Id*.

This case is no different. While Plaintiff concedes that he listed $30,000,0000.00 in the Civil Action Cover Sheet, the Complaint (and other known facts) tells a far different story. The Complaint alleges $30,000,000.00 in damages *if* Encore was operating for a full year. *See* C., at ¶ 3. Encore has not been open a full year. As alleged in the Complaint, Encore opened to the general public on June 23, 2019. *Id.*, at ¶ 14. Encore was only open for business for 43 days when the case was removed on August 5, 2019. *See id.* In that time, Encore reported total gambling profits of $65,364,511.30.[6] Encore cannot credibly argue that nearly half of these profits were obtained unlawfully based on the conduct alleged in the Complaint. To invoke this Court's limited jurisdiction, the First Circuit demands more from Encore. Encore must provide

---

[6] *See* https://massgaming.com/blog-post/the-massachusetts-gaming-commission-releases-june-2019-gross-gaming-revenue-for-plainridge-park-casino-mgm-springfield-and-encore-boston-harbor/ (reporting $16,789,943.88 in total profits during June); *see also* https://massgaming.com/blog-post/the-massachusetts-gaming-commission-releases-july-2019-gross-gaming-revenue-for-plainridge-park-casino-mgm-springfield-and-encore-boston-harbor/ (reporting $48,574,567.42 in total profits during July).

some credible evidence of a "reasonable probability" that the amount in controversy exceeds $5 million – it cannot simply rely on a non-binding, inadmissible estimate of annual damages that is clearly contradicted by profit figures Encore reported to the Massachusetts Gaming Commission that were published after the Complaint was filed. Clearly, Encore's reliance on the Civil Action Cover Sheet is misplaced, and it cannot be said that reliance on this form alone can be used to show a reasonable probability that the $5 million amount in controversy has been met.

The Plaintiff expressly pled in the Complaint that these annual damages were based on estimates and statistical assumptions. This is because the Plaintiff has no way of knowing the extent of damages at this stage in the litigation. The Plaintiff does not know how many unlawful Blackjack tables Encore offers at its casino. The Plaintiff does not know the average wager. The Plaintiff does not know how many unredeemed "cashout" tickets exist and those balances. But it does not matter what the Plaintiff knows or what estimates the Plaintiff alleged in the Complaint, because the Plaintiff is not the one seeking to invoke this Court's jurisdiction. While Plaintiff may not know the answer to these questions, Encore does. Encore has a statutory duty to report to the Massachusetts Gaming Commission all gambling revenues. It can track and calculate all unredeemed "cashout" tickets. It can conduct a review of its gaming floor to determine how many unlawful Blackjack games it offers and the average wagers at these tables. Encore can analyze win/loss statements for all of its players that it can use to calculate damages on its own. Whatever materials Encore consults, it must provide those materials to the Court in support of its Notice of Removal with just a basic calculation showing the amount in controversy at the time of removal. *Cf. Romulus v. CVS Pharmacy, Inc.*, 770 F.3d 67, 75 (1st Cir. 2014) (analyzing its own records, Encore can "apply a reasonable amount of intelligence" to determine whether the amount in controversy that existed on August 5, 2019 justified removal). Encore has not

attempted to conduct any meaningful investigation, analysis or inquiry into damages, despite having a wealth of facts that it could use to quantify damages. In sum, Encore has failed to meet its burden of showing a reasonable probability that the $5 million amount in controversy requirement has been satisfied, and jurisdiction in this Court is, therefore, lacking.

### C. ONLY TWO OF THE THREE DEFENDANTS CONSENTED TO REMOVAL

The Court also has a procedural basis to remand to state court. Under the rule of unanimity, all parties must consent to the removal of the action. *See* 28 U.S.C., § 1446(b)(2)(A); *see also Lapides v. Board of Regents of the Univ. Sys. of Ga.*, 535 U.S. 613 (2002). In this case, just two out of the three defendants served (i.e., Wynn MA, LLC and Wynn Resorts, Ltd.) filed the Notice of Removal. The third defendant (i.e., Encore Boston Harbor) did not join the Notice of Removal and did not consent to removal. According to the executed return of service, Encore Boston Harbor was served in-hand on July 16, 2019. Since more than 30 days has elapsed and Encore Boston Harbor has not consented to removal, the strict statutory procedures for removal have not been followed, removal is now untimely, and remand to state court is required. *See Montana v. Abbot Labs.*, 266 F. Supp. 2d 250, 260 (D. Mass. 2003).

Encore posits in the Notice of Removal that "Encore Boston Harbor is not a legal entity, but is the name of the resort and casino that Wynn owns and operates in Massachusetts." *See* Dkt. 1, at ¶ 12. Ignoring for the moment that this averment is unverified (and an averment that the Plaintiff does not concede), Encore's argument is irrelevant for purposes of consent to removal under CAFA. The removal statute only permits the Court to disregard defendants sued under fictitious names for purposes of determining citizenship; it does not permit the Court to disregard or overlook that defendant's lack of consent. *Compare* 28 U.S.C., § 1441(b)(1) ("[i]n determining whether a civil action is removable on the basis of the jurisdiction under section

7

1332(a) of this title, the citizenship of defendants sued under fictitious names shall be disregarded); *with* 28 U.S.C., § 1446(b)(2)(A) ([w]hen a civil action is removed solely under section 1441(a), **all defendants** who have been properly joined and served must join in or consent to the removal of the action") (emphasis supplied). There is no dispute that in hand service of Encore Boston Harbor is proper service. Thus, Encore Boston Harbor's failure to join defeats unanimity, and removal is procedurally improper.[7]

### D. PLAINTIFF IS ENTITLED TO COSTS AND ATTORNEY'S FEES IN LIGHT OF ENCORE'S IMPROVIDENT REMOVAL

The Plaintiff is entitled to an award of attorney's fees because Encore had no objectively reasonable basis for removal. "The process of removing a case to federal court and then having it remanded back to state court delays resolution of the case, imposes additional costs on both parties, and wastes judicial resources." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 140 (2005). Accordingly, the Plaintiff is entitled to reasonable attorney's fees and costs incurred in having to request remand to state court. *See* 28 U.S.C., § 1447(c)("[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal"). Attorney's fees should be awarded where there is no objectively reasonable basis for removal. *Martin*, 546 U.S. at 141.

---

[7] This is not to say that Encore is without legal remedy if it is actually true that "Encore Boston Harbor" is a fictitious name. A fictitious name is an operating name of a business known to the general public, not the legal name of the corporation perhaps concealed or unknown to the public. It is a businesses' sole decision whether to operate under a fictitious name rather than its legal name. If a business is sued under a widely known fictitious name, it ignores a duly served summons and complaint at its own peril. To preserve its rights, Encore Boston Harbor should have appeared in this litigation, moved to dismiss pursuant to MASS. R. CIV. P. 12(b)(8) (misnomer of party), and consented to removal at the appropriate time. Although these types of issues arise often and are handled and resolved appropriately (rather than ignored), Encore failed to take any action to preserve its right to removal. Where the procedures necessary to remove are <u>strictly</u> set by statute, Encore is without right to remove, without consent of Encore Boston Harbor, simply by making an unverified claim that it is a fictitious name.

8

Here, the Court should award attorneys' fees because Encore had no objectively reasonable basis to seek removal from state court. Removal was based on the Civil Action Cover Sheet that was so clearly contradicted by the facts set forth in the Complaint and Encore's monthly earnings reports made to the Massachusetts Gaming Commission. Encore undertook no investigation whatsoever in removing the action. It undertook no analysis of its own data to determine that the amount in controversy requirement had not been met. It did not even get consent of all defendants who were properly served in this action. Had Encore done a modicum of work to analyze and review relevant records, it would have reached the inevitable conclusion that the amount in controversy does not exceed $5 million. Encore has decidedly failed to meet its burden of establishing jurisdiction in Federal Court. Under these circumstances, Encore should be ordered to pay Plaintiff's reasonable attorney's fees and expenses incurred as a result of its improvident removal.

## IV.   CONCLUSION

For the reasons stated herein, Encore has failed to meet its burden of establishing to a reasonable probability that the amount in controversy in this case exceeds $5 million. The Notice of Removal is also deficient because only two of the three defendants consented to removal. Accordingly, the Court should remand this case to the Middlesex Superior Court and award the Plaintiff reasonable attorneys' fees and costs incurred as a result of removal.

Respectfully Submitted,

*/s/ Joshua N. Garick*

_____
Joshua N. Garick (BBO #674603)
LAW OFFICES OF JOSHUA N. GARICK, P.C.
34 Salem Street, Suite 202
Reading, Massachusetts 01867
Phone: (617) 600-7520
Joshua@GarickLaw.com

*Counsel for Plaintiff and the Class*

Dated: September 1, 2019

## LOCAL RULE 7.1(A)(2) CERTIFICATE

I certify that, in compliance with Local Rule 7.1(a)(2), I conferred with counsel for the defendant and have attempted in good faith to resolve or narrow the issues that are the subject of this motion.

*/s/ Joshua N. Garick*

_____
Joshua N. Garick, Esq.

Dated: September 1, 2019

## CERTIFICATE OF SERVICE

I hereby certify that on September 1, 2019, the foregoing was filed electronically using the Court's CM/ECF system which will send notification of such filing to all registered individuals.

*/s/ Joshua N. Garick*

_____
Joshua N. Garick, Esq.

Dated: September 1, 2019