UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| A. RICHARD SCHUSTER, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ENCORE BOSTON HARBOR; WYNN MA, LLC; and WYNN RESORTS, LIMITED,<br><br>Defendants. | No. 1:19-cv-11679-ADB<br><br>Leave to File Granted on October 22, 2019 |

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR
MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

Nothing in Schuster's opposition (the "Opposition") addresses the fact that Section 7(d) of the Rules of Blackjack (the "Blackjack Rules") explicitly recognizes as permissible a situation where the gaming "licensee chooses the option to pay a blackjack at odd[s] of 6 to 5 and doesn't use the 6 to 5 [blackjack] variation." The **only** sensible interpretation of Section 7(d) that gives any effect to this language is the one adopted by the Massachusetts Gaming Commission (the "MGC"), the agency that promulgated the Blackjack Rules: Section 7(d) permits a gaming licensee to elect the option to pay a blackjack at 6 to 5 odds without using the 6 to 5 blackjack variation so long as the licensee displays notice of the elected payout in plain sight on the blackjack table. Because Schuster's contrary interpretation ignores this language of Section 7(d) and because it is undisputed that Encore Boston Harbor ("Encore") displays the selected 6 to 5 payout in plain sight on its tables utilizing that payout, Defendants' motion to dismiss (the "Motion") the First Amended Complaint (the "Complaint") must be granted.

A. **Schuster's Interpretation of the Blackjack Rules is Incompatible with the Text of the Rules.**

Section 7(d) of the Blackjack Rules controls Schuster's allegations concerning improper blackjack payouts. It provides, in full, as follows:

> If the licensee chooses the option to pay a blackjack at odd [sic] of 6 to 5 and doesn't use the 6 to 5 variation, then Section 7(c) is void. If the licensee uses this option on 6 or 8 deck games, this variation's rules must be displayed on the layout in plain sight.

Section 7(d) is plain and unambiguous. It permits a gaming licensee such as Encore to "choose[] the option to pay a blackjack at odd[s] of 6 to 5" without using the "6 to 5 variation," so long as the elected payout is "displayed on the layout in plain sight." It is undisputed that Encore has, consistent with Section 7(d), elected the option to pay blackjack at odds of 6 to 5 without using the 6 to 5 blackjack variation. It is also undisputed that Encore uses this option with eight deck games. See 1st Am. Compl. ("FAC"), ¶ 29 (ECF No. 13). Furthermore, it is undisputed that the tables at which this option is used display the selected payout in plain sight. See Mem. in Support of Mot. to Dismiss ("Mem.") 8 (ECF No. 17). Therefore, Encore's selected payout option — an option that is explicitly recognized in Section 7(d) — does not violate the Blackjack Rules.

Unable to offer any contrary interpretation of the critical passage of Section 7(d) of the Blackjack Rules that explicitly recognizes Encore's option to choose to pay blackjacks at 6 to 5 odds without using the 6 to 5 blackjack variation, Schuster resorts to obfuscation. First, Schuster argues that this Court need not consider Section 7(d) at all because "[t]his Court's analysis should begin and end with Rule 3(e) of the Rules of Blackjack." Opposition ("Opp'n") 7 (ECF No. 26). However, because the Blackjack Rules must be interpreted in their entirety, the pertinent language of Section 7(d) cannot be ignored. See Commonwealth v. Hourican, 85 Mass.

App. Ct. 408, 410-11 (2014) ("Where reasonably possible, no portion of the language of a regulation should be treated as surplusage.  Language in a regulation, like language in a statute, must be considered in light of the other words surrounding it, and its scope and meaning must be determined by reference to context." (internal citations and quotation marks omitted)).

Schuster's next attempt to skirt the import of Section 7(d) of the Blackjack Rules is equally unavailing.  In the course of characterizing Section 7(d) as concerning nothing more than the even-money insurance bet, Schuster proclaims that Rule 7(d) does "not even discuss payment of 'blackjack.'"  Opp'n 9.  That assertion is wrong: Section 7(d) explicitly refers to a situation where the licensee "chooses the option to <u>pay a blackjack</u> at odd[s] of 6 to 5 and doesn't use the 6 to 5 [blackjack] variation." (Emphasis added.)  Schuster's assertion that Section 7(d) "is not explicit in its approval of [6 to 5] odds," Opp'n 15, is similarly wrong.  Section 7(d) explicitly refers to the licensee's power to "choose[] the option to pay a blackjack at odd[s] of 6 to 5" where the licensee "doesn't use the 6 to 5 blackjack variation."  That explicitly permitted option was chosen by Encore for use at some of its blackjack tables.

Schuster next complains that Encores blackjack tables violate Section 7(d) because they do not state that even-money insurance bets are void.  Opp'n 18.  This argument is a pure red herring.  First, this lawsuit is about Encore's blackjack payouts, not any of its practices with respect to even-money insurance bets.  None of the individual or class allegations of the Complaint concern any alleged violation by Encore of the Blackjack Rules' provisions concerning even-money insurance bets, nor are there any allegations that Schuster or any member of the proposed class has suffered any injury with respect to such alleged violations. Instead, the only issue with Encore's blackjack practices that is identified in the Complaint is

Encore's decision to pay blackjack at 6 to 5 odds on some of its tables without using the 6 to 5 blackjack variation — an option that is expressly given to Encore under Section 7(d).

In any event, whether Encore's tables contain any notation regarding even-money insurance bets is simply irrelevant to the issue of whether they comply with Section 7(d). That subsection of the Blackjack Rules provides that, if a gaming licensee like Encore "chooses the option to pay a blackjack at odd[s] of 6 to 5 and doesn't use the 6 to 5 blackjack variation" and "uses this option on 6 or 8 deck games, this variation's rules" — namely, the option to pay blackjack at odds of 6 to 5 — "must be displayed on the layout in plain sight." It is undisputed that Encore provides the required plain-sight notice of the selected payout on the tables utilizing Encore's "option to pay a blackjack at odd[s] of 6 to 5."

Finally, Schuster's reliance on other provisions of the Blackjack Rules and on other regulations promulgated by the MGC provides no basis for his wholesale disregard of the pertinent language of Section 7(d). Section 7(d) need not — and, indeed, cannot — be cast aside or disregarded as mere surplasage, as Schuster evidently proposes. See Hourican, 85 Mass. App. Ct. at 410-11. Instead, it is entirely possible to interpret the Blackjack Rules harmoniously as a whole, which this Court must do. See id.; see also TBI, Inc. v. Bd. of Health of N. Andover, 431 Mass. 9, 15 (2000) (explaining that "[w]hen a conflict exists [in a regulation], the provisions should be interpreted in a way that is harmonious and consistent with the legislative design.").

The sections of the Blackjack Rules upon which Schuster relies — Sections 3(e), 7(a), and 7(b) — set forth the default rule concerning blackjack payouts. Section 7(d), by contrast, sets forth the licensee's option to choose a 6 to 5 payout without using the 6 to 5 blackjack variation so long as notice of the selected payout is displayed in plain sight. Interpreting the Blackjack Rules in this manner not only gives harmonious effect to all provisions of the Rules,

but also resolves any apparent conflict between the provisions in a manner consistent with well-established canons of construction.  See Boston Prof'l Hockey Ass'n, Inc. v. Comm'r of Rev., 443 Mass. 276, 290 (2005); Doe v. Att'y Gen., 425 Mass. 210, 215 (1997).[1]

Importantly, this plain-meaning construction of the Blackjack Rules is not solely Encore's interpretation.  It is also the same interpretation put forth by the MGC, the agency that promulgated the Blackjack Rules.

**B.      Schuster's Interpretation of the Blackjack Rules is Inconsistent with the Interpretation of the MGC, the Agency that Promulgated the Blackjack Rules.**

Because Section 7(d) unambiguously recognizes that a gaming licensee can choose the option of paying a blackjack at 6 to 5 odds without using the 6 to 5 blackjack variation, this Court need go no further.  However, even if Schuster has proffered a reasonable alternative interpretation of Section 7(d) (which he has not), the existence of a plausible alternative interpretation would, at most, suggest ambiguity in the Blackjack Rules.  The presence of such ambiguity would be of no assistance to Schuster, however, because, as previously explained, see Mem. 5-7 & n.7, the MGC — the agency that promulgated the Blackjack Rules — has interpreted Section 7(d) to authorize 6 to 5 blackjack payouts when the 6 to 5 blackjack variation is not used.  To the extent that the Blackjack Rules are ambiguous, the MGC's interpretation of the Blackjack Rules that it promulgated is entitled to deference from this Court, and Schuster has a "formidable burden" in challenging the MGC's reasonable interpretation of its own rules.  Carey v. Comm'r of Correction, 479 Mass. 367, 369 (2018); see also Mass. Fine Wines &

---

[1] For similar reasons, Schuster's reliance on the general MGC regulations dealing with gaming equipment, see Opp'n 17-18, is misplaced.  The regulations dealing with gaming equipment deal only with equipment; they do not, as Schuster apparently believes, purport to alter or amend the Blackjack Rules promulgated by the MGC.

Spirits, LLC v. Alcoholic Bevs. Control Comm'n, 482 Mass. 683, 687 (2019); Peterborough Oil Co. v. Dep't of Envtl. Prot., 474 Mass. 443, 452 (2016).[2]

Perhaps recognizing that his strained interpretation of the Blackjack Rules is at odds with the interpretation of the agency that promulgated those rules, Schuster once again attempts to sidestep, rather than meaningfully engage with, that inconvenient fact. First, Schuster mischaracterizes Encore's request for judicial deference. Encore is not, as Schuster repeatedly

---

[2] Schuster argues that "an agency interpretation of an administrative rule is entitled to no deference as a matter of law." Opp'n 25. That assertion is wrong; Massachusetts courts routinely defer to an agency's interpretation of agency rules that are not contained within the Code of Massachusetts Regulations. See Finkelstein v. Bd. of Registration in Optometry, 370 Mass. 476, 478 (1976) (explaining, in a case involving interpretation of Rule 6(f) of the Rules of the Board of Registration in Optometry, that "[o]rdinarily an agency's interpretation of its own rule is entitled to great weight."); see, e.g., Sweet v. Civil Serv. Comm'n, 82 Mass. App. Ct. 1111, No. 11-P-1638, 2012 WL 3627507, at *2 (Aug. 24, 2012) (mem. & order pursuant to Rule 1:28) (deferring to department's interpretation of its own rules and explaining that "[a]s a general guideline of administrative law, the courts will defer to an agency's interpretation of its own rules so long as it does not apply them in an arbitrary, irrational, or inconsistent manner."); Crooker v. Superintendent, Mass. Corr. Instit., 19 Mass. App. Ct. 315, 319 (1985) (deferring to agency's interpretation of its parole guidelines); Mullaney v. Comm'r of Public Welfare, 9 Mass. App. Ct. 613, 616 (1980) (deferring to agency's interpretation of department-issued policy manual because "the appropriate practice for us is to give the agency's interpretation of its own rules great weight"); Fioravanti v. State Racing Comm'n, 6 Mass. App. Ct. 299, 302 (1978) (deferring to State Racing Commission's interpretation of one of its Rules of Horse Racing); cf. Zahavi v. Rent Control Bd. of Brookline, No. 769, 1992 WL 277070, at *3 (Mass. App. Div. Sep. 29, 1992) (deferring to board's interpretation of by-law). There is simply no support for Schuster's attempt to draw an arbitrary distinction between an agency's "rules" and an agency's "regulations." See, e.g., Kisor v. Wilkie, 139 S. Ct. 2400, 2409-2418 (2019) (using the terms "rule" and "regulation" interchangeably when referring to judicial deference to an agency's interpretation of its own rules or regulations and explaining that "we presume that Congress intended for courts to defer to agencies when they interpret their own ambiguous rules" and "[w]hen it applies, Auer deference gives an agency significant leeway to say what its own rules mean"); 39 Gerald A. McDonough, Mass. Prac., Admin. Law & Prac. § 12:36, at 131 (2d ed. 2017) ("Under ordinary circumstances, a state administrative agency's interpretation of its own rules or regulations is entitled to, and will be accorded, some degree of deference by the judiciary. A court will not disturb an agency's interpretation of its own rule or regulation unless the interpretation is patently wrong, unreasonable, arbitrary, whimsical, or capricious." (footnote omitted) (emphases added)); see generally Mass. Gen. Laws c. 30A, § 1(5) (defining "[r]egulation" as "includ[ing] the whole or any part of every rule, regulation, standard or other requirement of general application and future effect").

asserts, see Opp'n 21-24, asking this Court to give deference to either the "preliminary" factual findings of the Investigations and Enforcement Bureau ("IEB") with respect to the allegations of this lawsuit or its decision not to initiate an enforcement action. Instead, Encore asks this Court to defer, in accordance with well-settled administrative law principles, to the MGC's legal interpretation of its Blackjack Rules to the extent that the Court deems the rules to be ambiguous. As outlined above and in the memorandum in support of the motion to dismiss, courts routinely grant such deference to an agency's interpretation of its own rules and regulations.[3]

Schuster's gripe about whether the IEB, which is a part of the MGC, has the authority to interpret the Blackjack Rules, Opp'n 22-23, is irrelevant. The MGC, at a public hearing, made clear that it is perfectly aligned with the IEB with respect to the proper interpretation of Section 7(d) of the Blackjack Rules. Compare IEB Report 1 (ECF No. 17-2), with MGC Meeting Tr. 18:23-22:6 (ECF No. 17-3). The fact that the MGC's interpretation was announced during a public meeting does not disqualify that reasonable interpretation from receiving judicial deference. Cf. Sullivan v. Sleepy's LLC, 482 Mass. 227, 232 n.11 (2019) ("We will generally defer, however, to an agency's interpretation contained in an opinion letter if it is not contradicted by the text or purpose of the underlying statute."); Dorrian v. LVNV Funding, LLC,

---

[3] Schuster's argument against this Court taking judicial notice of the publicly available materials of a state agency, see Opp'n 5, suffers from a similar misconception. Encore is not asking this Court to judicially notice the facts preliminarily found by the IEB. It is simply requesting this Court to take judicial notice of the agency's legal interpretation contained in an official transcript of a public meeting of a state agency and in a publicly available document issued by the IEB. The authenticity of the transcript and the IEB report cannot reasonably be questioned, nor can there be any reasonable claim that the transcript and the IEB report do not accurately convey the MGC and IEB's interpretation of the Blackjack Rules as stated at the public meeting and in the IEB Report. Therefore, for the reasons previously stated, see Mem. 6 n.7, this Court can take judicial notice of the MGC's interpretation from the documents attached to the Motion. See Starr Surplus Lines Ins. Co. v. Mountaire Farms, Inc., 920 F.3d 111, 114 (1st Cir. 2019). Moreover, this Court can consider the transcript of the MGC public meeting for yet an additional reason: Schuster himself quotes extensively from that transcript in his Complaint. See Mem. 6 n.7.

479 Mass. 265, 273-74 (2018) (deferring to agency's interpretation of statute contained in advisory opinion issued under Mass. Gen. Laws c. 30A, § 8); <u>Niles v. Huntington Controls, Inc.</u>, 92 Mass. App. Ct. 15, 22 (2017) (holding that trial judge erred in failing to give deference to agency's opinion letters).

Finally, Schuster's contention that the MGC's interpretation of its Blackjack Rules amounts to "impermissible de facto legislation," Opp'n 24, is simply a repackaging of his claim that the MGC's interpretation is inconsistent with the text of the Blackjack Rules. As explained, however, that assertion is wrong.

Try as he might, Schuster cannot avoid the unavoidable: Section 7(d) of the Blackjack Rules explicitly refers to an option where a gaming licensee chooses to pay blackjack at 6 to 5 odds without using the 6 to 5 blackjack variation, and the MGC has confirmed this straightforward interpretation of the plain language of that section of the Blackjack Rules.[4]

**C.      Schuster's Slot-Ticket Redemption Allegations Must be Dismissed.[5]**

Schuster argues in his Opposition that Encore's slot-machine ticket-redemption procedures are unfairly and deceptively designed to force a slot-machine player to keep playing

---

[4]   Nor is Massachusetts unique in this regard. As IEB Director Bruce Band explained at the MGC public meeting, "[t]he 6-5 payout odds option provided in Section 7[(d)] is also authorized by other jurisdictions including Nevada, Connecticut, Maryland, Colorado, Iowa, Kansas, Michigan, Missouri, Mississippi, New Mexico, and Ohio, to mention a few." MGC Meeting Tr. 17:12-17.

[5]   Notably, Schuster effectively concedes that, as of July 18, 2019, Encore's ticket-redemption machines contain straightforward signage regarding Encore's redemption procedures. <u>See</u> Opp'n 28-29. Therefore, Schuster's ticket-redemption claims can relate only to a period of less than one month and clearly have no basis in law or fact after Encore began posting signage informing patrons in clear-as-day language: "Machine only dispenses cash, ticket will print for change. Please take ticket to the cashier to redeem." IEB Report 5. Even for that initial period, however, the claims are meritless and must be dismissed.

slot machines.[6] It is undisputed, however, that the ticket-redemption machines do two things: (1) dispense cash to the nearest whole dollar amount of the redemption ticket; and (2) dispense an additional redemption ticket with the remaining change. See Compl., ¶¶ 36-37; IEB Report 2. Schuster has not alleged that any of the information printed on the additional redemption ticket is inaccurate in any way. It is also undisputed that a patron is, and has always been, able to redeem her full balance at the cashier windows. In short, it is neither unfair nor deceptive to accurately list the amount of change remaining on an additional redemption ticket and to provide full reimbursement of that ticket at any of Encore's many cashier windows.

Schuster nevertheless doubles down on his baseless claim by invoking a patently inapplicable regulation that relates to the purchase of goods or services. See Opp'n 28 (citing 940 Code Mass. Regs. § 3.13(4)). The cited regulation governs such plainly inapplicable situations as disclosure of the price for goods or services, deceptive pricing, and deceptive use of "loss leaders," see 940 Code Mass. Regs. § 3.13(1)-(3), before turning to an equally inapplicable topic in the subsection cited by Schuster: a seller's disclosure to a buyer of goods or services of the seller's "refund, return, or cancellation policy," id. § 3.13(4). Schuster cites no authority whatsoever for the proposition that slot-machine patrons constitute "buyers" within the meaning

---

[6] That allegation is not contained anywhere in Schuster's c. 93A Demand Letter, which this Court can consider in connection with the Motion, see Flores v. OneWest Bank, F.S.B., 886 F.3d 160, 167 (1st Cir. 2018). In the demand letter and the draft amended complaint attached thereto, Schuster put forth a very different argument: that Encore was stealing from its slot-machine patrons, rounding down to the nearest whole dollar amount and adding the change to its "coffers." 93A Demand Letter, attached as Exhibit 1, at 7 (¶ 4), 12 (¶¶ 35-36). Because Schuster's demand letter failed to set forth the deceptive-design claim Schuster now asserts, any c. 93A claim premised on that newly minted claim must be dismissed. See Neuhoff v. Marvin Lumber & Cedar Co., 370 F.3d 197, 205-06 (1st Cir. 2004); Shaw v. BAC Home Loans Servicing, LP, No. 10-11021-DJC, 2013 WL 789195, at *5-6 (D. Mass. Mar. 1, 2013) (granting motion to dismiss c. 93A claim that was not raised in plaintiff's c. 93A demand letter); Da Silva v. U.S. Bank, N.A., 885 F. Supp. 2d 500, 506 (D. Mass. 2012) (same).

of Section 3.13. Nor does he cite any authority to support his apparent belief that Encore's ticket-redemption procedures constitute a "seller's refund, return, or cancellation policy." Id.

Slot-machine patrons are engaged in gaming, a subject over which the MGC has expansive regulatory authority. See Mass. Gen. Laws c. 23k, § 4. Of course, Schuster can cite no provision of the Gaming Act or any regulation or rule promulgated by the MGC to support his assertion that Encore's ticket-redemption procedures are unlawful, let alone unfair and deceptive. His unsupported request to extend an inapplicable regulation to this inapposite context should be rejected.

## CONCLUSION

For these reasons and those set forth in Encore's initial memorandum in support of its Motion , the Complaint must be dismissed with prejudice.

Dated: November 1, 2019

Respectfully submitted,

*/s/ Wayne F. Dennison*
Wayne F. Dennison (BBO #558879)
Joshua P. Dunn (BBO #685262)
BROWN RUDNICK LLP
One Financial Center
Boston, MA 02111
(617) 856-8200
wdennison@brownrudnick.com
jdunn@brownrudnick.com

*Attorneys for Defendants*
*Wynn MA, LLC and Wynn Resorts, Limited*

-11-

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on November 1, 2019.

                                                */s/ Joshua P. Dunn*
                                                Joshua P. Dunn