# EXHIBIT 1

 CT Corporation

**Service of Process Transmittal**
07/17/2019
CT Log Number 535879435

TO: Roxane Peper
Wynn Las Vegas, LLC
3131 Las Vegas Blvd S
Las Vegas, NV 89109-1967

RE: **Process Served in Massachusetts**

FOR: Wynn Resorts, Limited  (Domestic State: NV)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | A. RICHARD SCHUSTER, ETC., PLTF. vs. ENCORE BOSTON HARBOR, ET AL., DFTS. // TO: WYNN RESORTS, LTD. *Name discrepancy noted.* |
| **DOCUMENT(S) SERVED:** | Letter, First Amended Class Action Complaint |
| **COURT/AGENCY:** | Middlesex Superior Court, Middlesex County, MA Case # 1981CV02010 |
| **NATURE OF ACTION:** | First Amended Class Action Complaint and Jury Demand |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Boston, MA |
| **DATE AND HOUR OF SERVICE:** | By Certified Mail on 07/17/2019 postmarked on 07/15/2019 |
| **JURISDICTION SERVED :** | Massachusetts |
| **APPEARANCE OR ANSWER DUE:** | Within 30 days |
| **ATTORNEY(S) / SENDER(S):** | Joshua N. Garick Law Offices of Joshua N. Garick, P.C. 34 Salem Street, Suite 202 Reading, MA 01867 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 |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 07/17/2019, Expected Purge Date: 07/22/2019 Image SOP Email Notification,  Roxane Peper  roxane.peper@wynnresorts.com |
| **SIGNED:** | C T Corporation System |
| **ADDRESS:** | 155 Federal St Ste 700 Boston, MA 02110-1727 |
| **TELEPHONE:** | 617-757-6404 |

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

 CT Corporation

**Service of Process Transmittal**
07/17/2019
CT Log Number 535879435

| | |
|---|---|
| **TO:** | Roxane Peper<br>Wynn Las Vegas, LLC<br>3131 Las Vegas Blvd S<br>Las Vegas, NV 89109-1967 |
| **RE:** | **Process Served in Massachusetts** |
| **FOR:** | Wynn Resorts, Limited  (Domestic State: NV) |

**DOCKET HISTORY:**

| DOCUMENT(S) SERVED: | DATE AND HOUR OF SERVICE: | TO: | CT LOG NUMBER: |
|---|---|---|---|
| Summons, Civil Action Cover Sheet, Civil Tracking Order, Class Action Complaint, Motion | By Process Server on 07/15/2019 | Roxane Peper<br>Wynn Las Vegas, LLC | 535863264 |

Page 2 of  2 / JS

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

CERTIFIED MAIL

7018 1130 0000 0278 6709

U.S. POSTAGE PAID
PCM L3 ENV
READING, MA
01867
JUL 15, 19
AMOUNT

$7.75

1000        02110        R2304M115335-4

**JOSHUA N. GARICK, ESQ.**
LAW OFFICES OF JOSHUA N. GARICK, P.C.
34 SALEM STREET, SUITE 202
READING, MASSACHUSETTS 01867

## TO:

Wynn Resorts, Ltd.
ATTN: Matt Maddox, CEO
c/o CT Corporation System
155 Federal Street, Suite 700
Boston, MA 02110

## LAW OFFICES OF
# JOSHUA N. GARICK, P.C.

34 SALEM STREET, SUITE 202
READING, MASSACHUSETTS 01867
Phone: (617) 600-7520
Fax: (617) 600-7430
Joshua@GarickLaw.com
www.GarickLaw.com

July 15, 2019

### DEMAND LETTER PURSUANT TO G. L. c. 93A, §§ 1, *ET SEQ.*
### THE MASSACHUSETTS CONSUMER PROTECTION ACT

Encore Boston Harbor
ATTN: Robert DeSalvio, President
1 Broadway
Everett, MA 02149

Wynn MA, LLC
ATTN: Matt Maddox, CEO
c/o CT Corporation System
155 Federal Street, Suite 700
Boston, MA 02110

Wynn Resorts, Ltd.
ATTN: Matt Maddox, CEO
c/o CT Corporation System
155 Federal Street, Suite 700
Boston, MA 02110

Dear Messrs. DeSalvio and Maddox:

Please be advised that I represent A. Richard Schuster, individually and on behalf of all others similarly situated (the "Class"). I ask that all future correspondence and inquiries be forwarded to my attention. This letter shall serve as a formal demand pursuant to G. L c. 93A, § 9 – the Massachusetts Consumer Protection Act – for the unfair and deceptive business practices discussed herein.

The facts precipitating the demand are quite compelling. Rather than recount them separately, I attach a copy of an unfiled First Amended Class Action Complaint and Jury Demand. This document is incorporated herein as if fully restated and will put you on notice of the facts and legal claims possessed by Mr. Schuster and the Class. We intend to file this amended complaint should an amicable resolution not be achieved.

Pursuant to G. L. c. 93A, § 9, Mr. Schuster and the Class hereby demand $30,000,000.00 and expressly reserves the right to prove additional damages at trial, as they continue to accrue.

**DEMAND LETTER, G. L. c. 93A, § 9**

Encore Boston Harbor
Wynn MA, LLC
Wynn Resorts, Ltd.
July 15, 2019
Page 2

Notice is hereby given that you have thirty (30) days to respond with a reasonable offer of settlement. A failure to do so shall compel the commencement of a lawsuit wherein a judge is authorized to award treble damages, attorney's fees and costs as a punitive measure for your willful and knowing violation of Chapter 93A. I remain hopeful, however, that we can resolve this matter amicably and without the need of judicial intervention.

Thank you for your attention, and I look forward to receipt of your timely response.

Sincerely,

Joshua N. Garick

Enclosure
cc:   A. Richard Schuster

## LITIGATION HOLD

IN ANTICIPATION OF LITIGATION, ENCORE BOSTON HARBOR, WYNN MA, LLC, AND WYNN RESORTS, LTD. ARE EACH HEREBY NOTIFIED THAT THEY ARE TO PRESERVE ALL DOCUMENTS, CORRESPONDENCE (INCLUDING E-MAILS), MEMORANDA, RECORDS, VIDEO SURVEILLANCE SINCE THE ENCORE BOSTON HARBOR RESORT OPENED, AND ALL ELECTRONICALLY STORED INFORMATION AS DEFINED BY RULE 34 OF THE MASSACHUSETTS RULES OF CIVIL PROCEDURE, INCLUDING COPIES AND BACKUP, THAT ARE RELEVANT TO THIS DISPUTE. THESE MATERIALS ARE VALUABLE AND IRREPLACEABLE SOURCES OF DISCOVERABLE INFORMATION IN THIS MATTER. WE FURTHER NOTIFY YOU THAT IT IS YOUR OBLIGATION TO CONTINUE TO PRESERVE SUCH ELECTRONIC DATA, VIDEO SURVEILLANCE, AND PAPER FILES THROUGHOUT THE LITIGATION.

## COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, ss.                               SUPERIOR COURT DEPARTMENT

|  |  |
|---|---|
| A. RICHARD SCHUSTER, · )<br>*individually and on behalf of all others* )<br>*similarly situated,* )<br>  Plaintiff, )<br> )<br>v. )<br> )<br>ENCORE BOSTON HARBOR, )<br>WYNN MA, LLC, and · )<br>WYNN RESORTS, LTD., )<br>  Defendants. )<br> ) | C.A. No. |

### FIRST AMENDED CLASS ACTION COMPLAINT AND JURY DEMAND

**I.    INTRODUCTION**

1.      In casino gaming, it is said that the house always wins.  With the odds so drastically in its favor, it is unfathomable that a casino would intentionally resort to cheating so as to increase its statistical edge over the player *even more*.  The Encore Boston Harbor casino ("Encore") has done just that.  The Encore has disregarded Massachusetts law and ignored established rules of the game of Blackjack to increase its statistical advantage and lower the lawful payouts owed to its customers.

2.      Specifically, Encore has willfully and intentionally paid its customers odds of 6 to 5 when a player is dealt a "blackjack," when Massachusetts law clearly and unambiguously states that a player who is dealt a "blackjack" "shall be paid at odds of 3 to 2." *See Massachusetts Gaming Commission*, RULES OF BLACKJACK (Feb. 11, 2019), at ¶ 3(e) (hereinafter the "Rules of Blackjack").[1]

---

[1] https://massgaming.com/wp-content/uploads/RULES-Blackjack-2-11-19.pdf

3.      While this may not sound significant, an analysis using conservative estimates and assumptions suggests that the aggregate loss to Massachusetts consumers is astounding. Assuming an average wager of $50.00 per hand and 80 hands of Blackjack per hour, Encore's customers can expect to lose $35.60 per hour *more than* the losses they are already expected to incur in a fair Blackjack game that complies with Massachusetts law.[2] The math is even more disturbing when you multiply this average expected loss by five players per table, by 20 tables offering the crooked Blackjack game at any given time, and by 24 hours the casino is open each day. This means Encore is stealing $85,440.00 from its customers each day, or well in excess of $30 million each year.

4.      Encore is not content on stealing money from only its customers who play table games; Encore has also found a way to take money from its slot customers, too. When a slot player cashes out his or her winnings at a ticket redemption machine positioned throughout the casino, these machines only pay out in whole dollar amounts, without paying change, and without instruction on how to obtain the balance. The unredeemed change, therefore, is never returned to the player and is simply added to Encore's coffers.

5.      This lawsuit seeks to return the millions of dollars Encore has brazenly stolen and will continue to steal from its customers unless and until it changes its practices to conform with Massachusetts law.

## II.     PARTIES

6.      Plaintiff A. Richard Schuster ("Plaintiff") resides in the State of New York.

7.      Encore Boston Harbor ("Encore") is a luxury resort casino located at 1 Broadway, Everett, Middlesex County, Massachusetts.

---

[2] *See* https://www.blackjackinfo.com/no-6-to-5-blackjack/.

2

8.      Wynn MA, LLC is a Nevada limited liability company with a principal place of business in Everett, Middlesex County, Massachusetts.

9.      Wynn Resorts, Ltd. is a Nevada limited liability company with a principal place of business in Everett, Middlesex County, Massachusetts.

10.     Wynn MA, LLC and Wynn Resorts, Ltd. operate Encore and are licensed to offer casino gaming.

## III.    FACTUAL BACKGROUND

### A.      BACKGROUND RELATING TO ALL CLAIMS

11.     Encore is a beautiful facility, with a $2.6 billion cost to build, that boasts 144 table games and over 3,100 slot machines available to its customers.

12.     In September of 2014, defendants were granted a license by the Massachusetts Gaming Commission to operate a gaming casino in Everett, Massachusetts.

13.     As an express condition of licensure, Encore is only authorized to offer for play those table games and their rules authorized by the Massachusetts Gaming Commission. *See* 205 CODE. MASS. REGS., § 147.02.

14.     On June 23, 2019, Encore had its grand opening to the general public.

15.     To participate in any casino gaming, customers must convert cash into either casino chips that can be used at table games or slot machine credits that can be used to play slots. At the conclusion of a gambling session, any un-wagered chips or credits are supposed to be refunded to the customer.

### B.      ENCORE CHEATS AT BLACKJACK TO INCREASE THE CASINO'S ADVANTAGE

16.     One of the table games offered to Encore's customers is Blackjack.

17.     Blackjack is a card game, the object of which is simply to get more points (i.e., by

totaling the value of your cards) than the dealer without going over a combined value of 21.

18.     All players and the dealer are dealt two cards. Only one of the dealer's cards is shown to the player. If a player's first two cards include one ace and one card with a value of ten (which includes a ten, jack, queen or king), that player has been dealt a "blackjack," which, pursuant to the Rules of Blackjack, "shall be paid at odds of 3 to 2." *See* RULES OF BLACKJACK, at 3(e).[3]

19.     For example, if a player places a wager of $50.00 and is dealt a "blackjack," he or she will be paid $75.00 (i.e., a payout ratio of 3:2).

20.     Many of the Blackjack games offered on the main casino floor fail to comply with the Rules of Blackjack.[4] At these non-compliant Blackjack tables, Encore inexplicably makes a payout of 6:5 if a player has been dealt a "blackjack."

21.     Under these less favorable payout rules, if a player placed the same $50.00 wager as the previous example, and is dealt a "blackjack," Encore will only pay the player $60.00 (i.e., a payout ratio of 6:5).

22.     The Rules of Blackjack do authorize a payout of 6:5 in <u>limited</u> situations, but this is only when the casino offers the "6 to 5 blackjack variation," which, itself, has its own set of defined rules articulated by the Massachusetts Gaming Commission.

23.     The "6 to 5 blackjack variation" of Blackjack differs from the traditional ·

---

[3] A "blackjack" is legally defined as "an ace and any card having a point value of 10 dealt as the initial two cards to a player or a dealer except that this shall not include an ace and a ten point value card dealt to a player who has split pairs." *See id.*, at 1.

[4] Plaintiff concedes that not all Blackjack tables at Encore violate Massachusetts law. Upon information and belief, most of Encore's compliant Blackjack tables are offered exclusively in the upper terrace level of the casino – an area that, according to prominent signage, is reserved for Encore's high rollers. The non-complaint Blackjack tables are found on the main casino floor which is open to the general public without restriction.

Blackjack game because it is played with either a single deck or two stacked decks of cards. *See* RULES OF BLACKJACK, at §§ 2(a)(1) and 6a(b). Conversely, a traditional game is played with a shoe of six or eight decks of cards. *See id.*, at § 2(a)(4). Under the "6 to 5 blackjack variation," the players are dealt two cards faced down, and are then permitted to "pick up and evaluate the two cards dealt to him or her." *Id.*, at 6a(d). Conversely, players are dealt two cards faced up and are not permitted to touch the cards under the traditional Rules of Blackjack. *See id.*, at § 6(e).

24.     The following chart illustrates the difference between traditional Blackjack and "6 to 5 blackjack variation," as articulated in the Rules of Blackjack:

|  | Traditional | 6 to 5 Variation |
|---|---|---|
| Decks per Shoe | 6 or 8 | 1 or 2 |
| Cards Dealt | Face Up | Face Down |
| Touching Cards | Not Allowed | Allowed |
| Hit Soft 17 | Yes or No | Yes |
| "Blackjack" Payout | 3:2 | 6:5 |

25.     These rule differences are important because it alters, significantly, the casino's statistical advantage. Playing Blackjack with a single deck or double deck increases the player's advantage by .48% or .19%, respectively. *See Wizard of Odds Consulting, Inc.*, BLACKJACK RULE VARIATIONS (Jan. 21, 2019), accessible at <https://wizardofodds.com/games/blackjack/rule-variations/>. Because the player is gaining these advantages, the casino is permitted to offset this edge by coupling these rules with other rules designed to reduce the player advantage.

26.     A dealer hitting on a soft-17 reduces the player advantage by .22%. *See id.*[5]

---

[5] In Blackjack, an "ace" can have the value of either 1 or 11. *See* RULES OF BLACKJACK, at § 2(b)(3). A "soft total" is defined as "the total point count of a hand containing an ace when the ace is counted as 11 in value." *Id.*, at § 1. Thus, a soft-17 would be, for example, an ace and a six. While the casino has the option to either hit or stand on soft-17, if the casino elects the later, it is doing so intentionally so as to increase the house advantage to the detriment of the player. *See id.*, at § 12(b).

27.     Similarly, using the 6:5 payout for "blackjack" reduces the player advantage by 1.39%. *See id.*

28.     Upon information and belief, Encore does not offer the actual "6 to 5 blackjack variation" that is authorized by law, as there are no single or two deck shoes, cards are dealt to players face up, and the players are not allowed to touch the cards.

29.     Instead, in violation of Massachusetts law, Encore has coupled the "6 to 5 blackjack variation" rules that are favorable to the house, with the traditional rules that are also favorable to the house.  This is designed to maximize the casino's advantage far in excess of that which is permitted under either variation of Blackjack that is approved by the Massachusetts Gaming Commission.  Instead of playing by these established rules, Encore has created its own set of rules as follows:

|  | Encore Rules |
|---|---|
| Decks per Shoe | 8 |
| Cards Dealt | Face up |
| Touching Cards | Not Allowed |
| Hit Soft 17 | Yes |
| "Blackjack" Payout | 6:5 |

30.     This unlawful set of rules created unilaterally by Encore has resulted in decreased payouts to players, increased losses to players, and increased profits to Encore.

31.     This unlawful set of rules is not permitted under Massachusetts law.

**C.     ENCORE FAILS TO PAY OUT SLOT WINNINGS**

32.     To play slot machines, a player deposits cash into the slot machine, which is converted to credits that can be used to make a wager.

33.     At the conclusion of any wager, the players can "cashout" any unused credits remaining on the slot machine.  When the player hits the "cashout" button, the machine prints a ticket that can be redeemed at ticket redemption machines positioned throughout the casino.

34.     These ticket redemption machines look like ATM machines.  Once the ticket is inserted, the machine is supposed to dispense cash to the customer in the amount of the ticket.

35.     The ticket redemption machines, however, only pay out whole dollar amounts, without change, and without instruction on how to redeem the balance.

36.     Encore always rounds down, meaning a player will forfeit any amounts of the ticket above the last whole dollar amount.

37.     All unclaimed funds are retained by Encore.

**D.     FACTS RELATING TO PLAINTIFF'S GAMING EXPERIENCE AT ENCORE**

38.     On July 11, 2019, Plaintiff gambled at Encore.

39.     Plaintiff played several table games at Encore, including Blackjack.

40.     At the Blackjack table, the dealer used an eight deck shoe.

41.     At the Blackjack table, the players, including the Plaintiff, were not allowed to touch the cards, and all cards were dealt face up.

42.     At the Blackjack table, Encore made 6:5 payouts when a player was dealt a "blackjack."

43.     The plaintiff was, in fact, dealt several "blackjacks" while playing Blackjack. However, he only received a payout of 6:5 when he was dealt each "blackjack."

44.     The Plaintiff also played slots while at Encore.

45.     When the Plaintiff cashed out his balances on the slot machines, he was given tickets with the balance owed to him.

46.     The Plaintiff attempted to cashout these tickets at ticket redemption centers positioned throughout the casino.  However, Encore only paid out whole dollars, and failed to pay the balance due on these tickets.

47.     As a result, the Plaintiff never received the full amount of slot credits that he was owed.

E.     **CLASS ACTION ALLEGATIONS**

48.     Plaintiff brings this action on behalf of himself and as a class action, pursuant to the provisions of Rules 23(a) and (b) of the Massachusetts Rules of Civil Procedure and G. L. c. 93A, § 9(2) on behalf of a class consisting of all Encore Boston Harbor casino customers who played a slot machine or Blackjack at a table offering a payout of 6 to 5 when being dealt a "blackjack."[6]

49.     Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of his claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

50.     Numerosity – MASS. R. CIV. P. 23(a)(1). The class is so numerous that individual joinder of all class members is impracticable. Plaintiff believes that there are thousands of class members. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, and/or published notice.

51.     Commonality and Predominance – MASS. R. CIV. P. 23(a)(2) and 23(b). This action involves common questions of law and fact, which predominate over any questions affecting only individual class members. All class members were subject to the same deception, and all involve common questions of law and fact.

52.     Typicality – MASS. R. CIV. P. 23(a)(3). Plaintiff's claims are typical of the claims

---

[6] The Plaintiff reserves the right to amend the class definition if further information and discovery indicates that the class definition should be narrowed, expanded, or otherwise modified, including but not limited to, the creation of multiple classes or subclasses.

of the other members of the class because, among other things, all class members were similarly

injured through the uniform misconduct described herein and all class members have the same

claim, *i.e.*, that Encore violated the Rules of Blackjack by paying 6 to 5 odds when a player is

dealt a "Blackjack," and by only paying whole dollars to slot players attempting to monetize

their cashout tickets.

53.     Adequacy of Representation – MASS. R. CIV. P. 23(a)(4) and G. L. c. 93A, § 9(2).

Plaintiff is an adequate class representative because his interests do not conflict with the interests

of the other members of the class he seeks to represent; he has retained counsel competent and

experienced in class action litigation, and Plaintiff intends to prosecute this action vigorously.

The class' interests will be fairly and adequately protected by Plaintiff and counsel.

54.     Similarly Situated and Injured Persons – G. L. c. 93A, § 9(2).  The proposed class

consists of customers who have suffered the same injury as the Plaintiff and who, for the reasons

stated above, are similarly situated to each other and to the Plaintiff.

55.     Superiority – MASS. R. CIV. P. 23(b).  A class action is superior to any other

available methods for fairly and efficiently adjudicating this controversy, and no unusual

difficulties are likely to be encountered in the management of this class action.  The damages

suffered by Plaintiff and the other members of the class are relatively small compared to the

burden and expense that would be required to individually litigate their claims against Encore, so

it would be impracticable for class members to individually seek redress for Encore's wrongful

conduct.  Even if the class members could afford individual litigation, the court system could

not.  Individualized litigation creates a potential for inconsistent or contradictory judgments, and

increases the delay and expense to all parties and the court system.  By contrast, the class action

device presents far fewer management difficulties, and provides the benefits of single

adjudication, economy of scale, and comprehensive supervision by a single court.

## IV.     CAUSES OF ACTION

### COUNT ONE
#### BREACH OF CONTRACT

56.     The Plaintiff readopts and realleges the preceding paragraphs, and incorporates them into this count.

57.     Plaintiff and members of the class entered into a contract with Encore to play Blackjack with the understanding that all wagers would comply with the Rules of Blackjack enumerated by the Massachusetts Gaming Commission.

58.     Plaintiff and members of the class entered into a contract with Encore to make slot wagers with the understanding that all credits remaining on the slot machine could be redeemed in full at the player's sole option.

59.     Plaintiff and members of the class have fully performed all covenants, conditions and obligations required by them, except to the extent made impossible by the defendants.

60.     The defendants breached these contracts by failing to conduct Blackjack games in accordance with the Rules of Blackjack.  This includes, without limitation, reducing a "blackjack" payout from 3:2 to 6:5 (i.e., an additional 20% vig).

61.     The defendants breached these contracts by failing to refund all slot credits in full.

62.     As a direct and proximate cause of these breaches, Plaintiff and members of the class have incurred significant financial damages.

### COUNT TWO
#### UNJUST ENRICHMENT

63.     Plaintiff readopts and realleges the preceding paragraphs, and incorporates them into this count.

64.     All monies paid to defendants that should have been paid or returned to Plaintiff and members of the class constitute a benefit that the defendants aggressively sought and voluntarily accepted.

65.     Retention of these benefits would violate fundamental principles of justice, equity and good conscience.

## COUNT THREE
### PROMISSORY ESTOPPEL

66.     Plaintiff readopts and realleges the preceding paragraphs, and incorporates them into this count.

67.     Defendants promised to Plaintiff and members of the class that all Blackjack wagers would comply with the Rules of Blackjack enumerated by the Massachusetts Gaming Commission.

68.     Defendants promised Plaintiff and members of the class that all credits remaining on slot machines could be redeemed in full at the player's sole option.

69.     Plaintiff and members of the class reasonably relied on these promises to their economic detriment.

70.     As a direct and proximate cause of these breached promises, Plaintiff and members of the class have incurred significant financial damage.

## COUNT FOUR
### CONVERSION/THEFT

71.     Plaintiff readopts and realleges the preceding paragraphs, and incorporates them into this count.

72.     Plaintiff and members of the class paid money to the defendants for the opportunity to gamble at Encore.

73.     These monies were converted to casino chips or slot credits that could be used to make wagers at the casino.

74.     All remaining chips and slot credits that were not wagered were refundable at any time.

75.     The defendants have unlawfully and wrongfully exercised dominion and control over Plaintiff's and members of the class' money by withholding and otherwise failing to pay 20% of the player's winnings when being dealt a "blackjack" in violation of Massachusetts law and the Rules of Blackjack.

76.     The defendants have unlawfully and wrongfully exercised dominion and control over Plaintiff's and members of the class' money by withholding and otherwise failing to pay change remaining on slot machine cashout tickets.

77.     Plaintiff and members of the class have an ownership and/or possessory right in these monies as they are either: (1) payouts due in accordance with Massachusetts law and the Rules of Blackjack; or (2) un-wagered funds belonging to the player.

78.     As a direct and proximate cause of these unlawful acts, Plaintiff and members of the class have incurred significant financial damage.

## COUNT FIVE
### UNFAIR AND DECEPTIVE BUSINESS PRACTICES, G. L. C. 93A

79.     Plaintiff readopts and realleges the preceding paragraphs, and incorporates them into this count.

80.     At all relevant times, all defendants were engaged in trade or commerce.

81.     Defendants engaged in the fraudulent and deceitful conduct as described above, in violation of Chapter 93A.

82.     Specifically, by reducing its payouts when a player is dealt a "blackjack," Encore

12

has created a set of Blackjack rules that is designed to increase the casino's statistical advantage and lower the lawful payouts owed to its customers.

83.     Encore has failed to comply with Massachusetts law, which expressly articulates the Rules of Blackjack that it may offer to Massachusetts consumers. *See* 205 CODE MASS. REGS., §§ 147.01, *et seq.*; *see also* G. L. c. 23K, § 37.

84.     Encore has also acted unfairly and deceptively by refusing to return to slot players the full value of their slot tickets when cashed out at a ticket redemption machine, and by failing to provide instructions on how to obtain the balance.

85.     By paying out only whole dollars and retaining the change owed to the player, Encore is unlawfully withholding funds that rightfully belong to the consumer.

86.     All other conduct and causes of action set forth in this Complaint constitute *per se* violations of the Massachusetts Consumer Protection Act.

87.     Defendants committed these unfair and deceptive business practices willfully and knowingly.

88.     On July 15, 2019, the defendants were each served a demand letter in accordance with G. L. c. 93A, § 9.

89.     Defendants failed to make a reasonable offer of settlement in response to these demands.

90.     As a direct and proximate cause of the defendants' unfair and deceptive conduct, Plaintiff and members of the class have incurred significant financial damage, and they are entitled to treble damages, attorneys' fees, expenses and costs.

## V.     PRAYER FOR RELIEF

WHEREFORE, the Plaintiff, individually and on behalf of all others similarly situated,

13

respectfully requests that the Court order the following relief:

A.     An order certifying the class as requested herein;

B.     Actual and statutory damages;

C.     Treble damages as required by law;

D.     An order enjoining defendants from continuing to engage in the unlawful conduct alleged herein;

E.     Attorneys' fees and costs to plaintiffs and the class; and

F.     Such other and further relief as may be just and proper.

## JURY DEMAND

The Plaintiff, individually and on behalf of all others similarly situated, hereby demands a trial by jury of all claims in this Complaint so triable.

Respectfully submitted,

Joshua N. Garick (BBO #674603)
LAW OFFICES OF JOSHUA N. GARICK, P.C.
34 Salem Street, Suite 202
Reading, Massachusetts 01867
Phone:  (617) 600-7520
Joshua@GarickLaw.com

*Counsel for Plaintiff and the Class*

Dated: August ___, 2019