UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| A. RICHARD SCHUSTER, *on behalf of all others similarly situated*, | * * * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | Civil Action No. 19-cv-11679-ADB |
| | * | |
| WYNN RESORTS HOLDINGS, LLC, WYNN MA, LLC, and WYNN RESORTS, LTD., | * * * | |
| | * | |
| Defendants. | * | |

**<u>MEMORANDUM & ORDER</u>**

BURROUGHS, D.J.

## I.    INTRODUCTION

Plaintiff A. Richard Schuster ("Schuster" or "Plaintiff") brings claims on behalf of

himself and a putative class for breach of contract, promissory estoppel, conversion, and

violation of Massachusetts General Laws Chapter 93A against Defendants Wynn Resorts

Holdings, LLC, Wynn MA, LLC, and Wynn Resorts, Ltd. (collectively, "Defendants" or

"Wynn").  Before the Court is Defendants' motion for summary judgment as to each of

Plaintiff's claims, [ECF No. 97], and Plaintiff's motions for class certification and to supplement

the record, [ECF Nos. 98, 116].  The Court also considers Plaintiff's request, in his opposition to

Defendants' motion for summary judgment, that the Court strike the declaration of William

Pangoras ("Pangoras Declaration").  [ECF No. 109 at 7 n.4].  For the reasons set forth below,

Defendants' motion for summary judgment is <u>GRANTED</u>, Plaintiff's request to strike the

Pangoras Declaration is <u>DENIED</u>, Plaintiff's motion for class certification is <u>DENIED</u> as moot, and Plaintiff's motion to supplement the record is also <u>DENIED</u>.

## II.      BACKGROUND & PROCEDURAL HISTORY

Unless otherwise noted, the following facts are undisputed.[1]

### A.      Encore's Slot Machines

The Encore Boston Harbor ("Encore") is a luxury resort and casino that is operated by Wynn MA, LLC ("Wynn MA") and located in Everett, Massachusetts. [ECF No. 110 ¶¶ 1–2]. Wynn MA holds a gaming license issued by the Massachusetts Gaming Commission ("MGC"), which allows casino gaming at Encore. [<u>Id.</u> ¶ 3]. Relevant here, Encore has numerous slot machines. [<u>Id.</u> ¶ 4]. When a patron concludes a gaming session at a slot machine at Encore, that individual can press the "cashout" button on the machine. [<u>Id.</u> ¶ 5]. The slot machine then dispenses a printed ticket containing the amount of credits the patron had left on the machine at the time that the "cashout" button was pressed. [<u>Id.</u>]. That ticket can be inserted into another slot machine for further gaming or it can be redeemed at either a cashier window, also referred to as a "cashier cage," or at self-service kiosk known as ticket redemption units ("TRUs")[2], which are located throughout the casino. [<u>Id.</u> ¶¶ 6–8].

"For at least the first several days after Encore's grand opening, the TRUs dispensed coins." [ECF No. 110 ¶ 11]. Defendants contend that during this period of time, the TRUs experienced coin jams and coin-mechanism malfunctions and that these issues contributed to

---

[1] The Court draws the facts from Plaintiff's response to Defendants' statement of undisputed facts, [ECF No. 110], as it, along with the documents cited therein, contains the parties' positions on the material facts. The Court further notes that citations to specific paragraphs are inclusive of the response to said paragraph.

[2] Encore's TRUs are manufactured by Everi Payments, Inc. ("Everi"). [ECF No. 110 ¶ 9].

accounting difficulties, but Plaintiff strongly disputes these assertions.  [Id. ¶¶ 12–13].  In any event, several days after the grand opening Defendants decided to make the TRUs coinless.[3]  [Id. ¶ 14].  This meant that when an Encore patron inserted a slot machine ticket into a TRU, the TRU would dispense cash in the amount of the nearest whole dollar value of the credits and would also dispense a separate ticket (a "TRU ticket") reflecting the value of any remaining credits less than one-dollar in value.  [Id. ¶ 15].  For example, if a patron inserted a slot machine ticket into a coinless TRU with a value of $8.90, the TRU would dispense $8 in cash, and a TRU ticket worth 90 cents.  A TRU ticket could be redeemed at either (1) a cashier window or (2) by inserting it into another slot machine to continue gaming.  [Id. ¶ 16].

### B.    Plaintiff's First Visit to Encore

Plaintiff first visited Encore on July 11, 2019 and, during his visit, played on approximately ten different slot machines.  [ECF No. 110 ¶¶ 25–27].  The slot machine tickets that he received accurately displayed the balance of his remaining slot credits.  [Id. ¶ 29].  During that initial visit, he used multiple TRUs to redeem his slot machine tickets.  [Id. ¶ 30].  Each time he used a TRU, it dispensed some combination of cash and a TRU ticket that together equaled the value of the slot machine ticket he had inserted in the TRU.  [Id. ¶ 31].  Plaintiff did not save any of the TRU tickets that he personally received on his first or later visits to Encore, see [id. ¶¶ 35–38, 74–76], but at his deposition in connection with this action, he was shown TRU tickets received by former Plaintiff Robert Ranson during his visit to Encore on July 6, 2019.  [Id. ¶ 32].  A copy of the ticket is reproduced here

---

[3] The parties hotly dispute the underlying reasons for converting the TRUs to coinless machines.  See [ECF No. 110 ¶¶ 18–21].



[ECF No. 102-9 at 3].  After Plaintiff was shown the ticket, counsel for Defendants asked him,

"[d]id the tickets . . . that you received look like this," and he answered, "Yes.  Although I don't

remember the exact language on the tickets."[4]  [ECF No. 110 ¶ 32].

Also during his first visit, Plaintiff inserted some of his TRU tickets into slot machines

and "by attempting to insert [TRU tickets] into slot machines" "discovered that slot machines

accepted TRU tickets . . . ."  [ECF No. 110 ¶ 35].  He admits that he did this because he wanted

to continue to gamble.  [Id. ¶ 36].  Plaintiff also threw away some of his TRU tickets because he

"wanted to move onto [his] next activity."  [Id. ¶¶ 37–38].  During the visit, Plaintiff did not ask

any Encore employees how to redeem his TRU tickets.  [Id. ¶ 39].

---

[4] Plaintiff now "disputes that the tickets he received at Encore had the same or similar language
printed on them [as the tickets Ranson received]."  [ECF No. 110 ¶ 34].  When shown Ranson's
tickets, however, Plaintiff stated only that he "d[id not] remember the exact language on the
tickets" and therefore "can[not] speak to the language on the ticket."  [Id. ¶ 32].

### C.    Plaintiff Files Suit & Wynn Implements Changes

Four days after his first visit to Encore, Plaintiff filed the instant lawsuit.  [ECF No. 110 ¶ 40].  Within 72 hours of this suit being filed, a sign was placed on the exterior of each TRU at Encore that bore the following message: "Machine only dispenses cash, ticket will print for change.  Please take ticket to the cashier to redeem."  [Id. ¶ 41].  Defendants assert that the addition of the signs was required by the MGC Investigations and Enforcement Bureau ("IEB"), which Plaintiff disputes, but it is apparent from Plaintiff's responsive statement of facts that he agrees the installation of the signs was at least suggested by the IEB.  [Id. ¶ 42 (Plaintiff asserting, as evidence that the signs were not mandated, that "Wynn conceded that the addition of signage was a 'suggestion'")].

On July 16, 2019, one day after the lawsuit was filed and before the signs were placed on every TRU, IEB Agent Lozano ("Lozano") emailed a picture of the TRU signs to IEB Assistant Director Band ("Band"), IEB Regulatory Compliance Manager Carpenter ("Carpenter"), and IEB Field Manager Cain ("Cain"), and, on the same day, Cain responded, "Looks acceptable." [Id. ¶¶ 43–44].  By the evening of July 16, 2019, 15 TRUs had the signage displayed while 13 did not.  [Id. ¶ 45].

On July 17, 2019, Lozano sent an email to several Encore personnel, copying Band, Carpenter, and Cain, that stated, among other things, that "IEB will require signage on all TRU's as soon as possible."  [ECF No. 110 ¶ 46].  On the same day, Band forwarded Lozano's email to Encore's then-President Robert DeSalvio and Senior Vice President and General Counsel Jacqui Krum, highlighting the portion of the email that identified TRUs that did not have the sign, and asked, "[c]an we get the signs placed on these machines?"  [Id. ¶ 47].  By the morning of July 18, 2019, the signs were affixed to each TRU at Encore.  [Id. ¶ 48].

The IEB also reviewed the allegations made against Defendants in this lawsuit, and prepared a memorandum, dated July 18, 2019, that was submitted to the MGC commissioners. [ECF No. 110 ¶ 49]. That memo described Encore's coinless TRUs and explained how a patron possessing a slot machine ticket for a dollar amount and change who elected to use a TRU to redeem the ticket would receive the dollar amount in cash and a TRU ticket for the change, and that to retrieve the change, the patron would have to redeem the TRU ticket at a cashier window. [Id. ¶ 50]. The memo further stated that "[t]o eliminate confusion surrounding this issue, Encore has placed signage on its [TRUs] explaining that the machines will only dispense cash and not coin . . . ."[5] [Id.]. A photo of the sign affixed to the TRUs was attached to the memo. [Id. ¶ 51].

On July 18, 2019, the MGC held a public meeting at which this lawsuit was discussed, [ECF No. 110 ¶ 52], as was the idea of designating at least one TRU to dispense both cash and coins, [id. ¶ 56]. Shortly after the meeting, Defendants converted the two TRUs located closest to the cashier window on the first floor of the casino to dispense both cash and coin. [Id. ¶ 58]. Defendants also added additional signage to the display screens of the TRUs that did not dispense coins, which stated "[t]his [TRU] will pay out in cash. Tickets will print for change and can be redeemed at the cashier." [Id. ¶ 59].

### D.    Plaintiff's Subsequent Visits

After his first visit, Plaintiff returned to Encore on 11 separate occasions and played slots each time. [ECF No. 110 ¶ 68]. At some point during those visits, Plaintiff recalled seeing a sign on the exterior of the TRUs that contained the following message: "Machine only dispenses cash, ticket will print for change. Please take ticket to the cashier to redeem." [Id. ¶ 69]. Plaintiff also learned, at an unspecified time, where the cashier window was located and that he

---

[5] Plaintiff does not dispute that the report is accurately quoted but does dispute the IEB's conclusions. [ECF No. 110 ¶ 50].

could redeem his TRU tickets at that window.  [Id. ¶¶ 70, 71].  Nonetheless, Plaintiff never tried to redeem any of his TRU tickets at the cashier window, [id. ¶ 72], and during those subsequent visits he never asked an Encore employee where he could redeem his TRU tickets, [id. ¶ 73]. Plaintiff did, however, continue to insert some of his TRU tickets into slot machines and to discard others.  [Id. ¶¶ 74–75].

### E.    Breach of Contract Claim

During discovery, Wynn propounded an interrogatory on Plaintiff asking him to identify "the alleged promise made by Defendants and your alleged reasonable reliance on that promise to your economic detriment."  [ECF No. 110 ¶ 77].  In Plaintiff's response to that interrogatory, he stated that, "Encore promised that all credits remaining on slot machines could be redeemed in full at the player's sole option at the [TRUs] located throughout the casino."  [Id. ¶ 78].  Later, at Plaintiff's deposition, he was asked to identify the facts that he was aware of to support the alleged promise by Defendants that slot machine credits could be redeemed "in full" at TRUs, and Plaintiff identified the "cashout" button on the slot machines and the signage on the side panel of the TRUs.  [Id. ¶ 79].  With respect to the TRU side-panel signage, Plaintiff could not recall what it said, but believes that it identified the TRU as a "redemption center" and that it said "voucher redemption or something of that nature."  [Id. ¶ 80].  Plaintiff concedes that no Encore employee told him that he could redeem slot machine credits in full at TRUs.  [Id. ¶ 81].

### III.    Plaintiff's Request to Strike the Pangoras Declaration

Because the request to strike bears on the evidence to be considered when deciding the pending motion for summary judgment, the Court addresses it first.

## A.      Legal Standard

Pursuant to Federal Rule of Civil Procedure 56(c)(4), "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."  When ruling on a motion for summary judgment, "a court may take into account any material that would be admissible or usable at trial . . . [but] inadmissible evidence may not be considered."  Horta v. Sullivan, 4 F.3d 2, 8 (1st Cir. 1993).  "If evidence cannot be presented in a form that would be admissible at trial, the court may not rely on it."  Facey v. Dickhaut, 91 F. Supp. 3d 12, 19 (D. Mass. 2014) (citing Fed. R. Civ. P. 56(c)(2)) (additional citations omitted).

"A motion to strike is the appropriate means of objecting to the use of affidavit evidence on a motion for summary judgment."  Facey, 91 F. Supp. 3d at 19 (citing Casas Off. Machs., Inc. v. Mita Copystar Am., Inc., 42 F.3d 668, 682 (1st Cir. 1994)).  The objecting party must "(a) apprise the trial court . . . that she considers the affidavit defective, and (b) spell out the nature of the ostensible defects clearly and distinctly."  Perez v. Volvo Car Corp., 247 F.3d 303, 314 (1st Cir. 2001).  "Furthermore, a court will disregard only those portions of an affidavit that are inadmissible and consider the rest of it."  Casas Off. Machs., 42 F.3d at 682 (citation omitted).

## B.      Discussion

Plaintiff argues that the Court should strike the entire declaration of William Pangoras, who served as Encore's Director of Casino Finance from September 2018 to July 2020.  [ECF No. 102-5 ¶ 2].  Plaintiff raises this argument in a footnote in his opposition to Defendants' motion for summary judgment, [ECF No. 109 at 7 n.4], and asserts that the declaration is flawed because (1) it "does not identify any customer complaint but instead references complaints that

he 'became generally aware of' through conversations with others," which Plaintiff contends is "totem pole hearsay," and (2) because his declaration regarding customer complaints amounts to a "sham affidavit" used to contradict 30(b)(6) deposition testimony and documents that show a lack of customer complaints.  Plaintiff also asserts that Pangoras was not properly disclosed or identified in Defendants' interrogatory responses or initial disclosures.  Defendants counter that this request to strike is procedurally improper and substantively meritless.  [ECF No. 114 at 10 n.9].

The Court need go no further than Defendants' first argument as it agrees that Plaintiff's request to strike is procedurally improper.  Pursuant to Local Rule 7.1, Plaintiff was required to file a separate motion to strike.  Instead, Plaintiff buried his argument in a single footnote in his opposition to Defendants' motion for summary judgment.  Nasir v. Town of Foxborough, No. 19-cv-11196, 2022 WL 375300, at *1 (D. Mass. Feb. 7, 2022) (holding that plaintiff failed to comply with Local Rule 7.1 by not filing their request to strike as a separate motion and further finding that non-compliance with Local Rule 7.1 "constitutes sufficient grounds to deny the request"); see also Endurance Am. Specialty Ins. Co. v. Northland Inv. Corp., No. 18-cv-10724, 2018 WL 2994405, at *1 (D. Mass. June 14, 2018) (finding that under Local Rule 7.1 all request for relief "must be filed as a separate motion, and not contained in a response to another motion").

Moreover, even if Plaintiff's motion was procedurally proper, his arguments do not warrant striking the affidavit.  Starting with Plaintiff's hearsay argument, "[w]hile it is true that 'hearsay evidence cannot be considered on summary judgment for the truth of the matter asserted[,]' 'a district court may consider hearsay evidence submitted in an inadmissible form at the summary judgment stage where the content of the evidence proffered could later be provided

in an admissible form at trial.'"  Edwards v. Granite Telecomms., Inc., No. 19-cv-12330, 2022 WL 974049, at *2 (D. Mass. Mar. 31, 2022) (first quoting Evergreen Partnering Grp., Inc. v. Pactiv Corp., 832 F.3d 1, 12 (1st Cir. 2016); and then quoting SEC v. Ramírez, No. 15-cv-2365, 2018 WL 2021464, at *15 (D.P.R. Apr. 30, 2018)).  Here, Plaintiff does not offer any argument as to why the statements in the Pangoras Declaration cannot be reduced to an admissible form and the Court finds that the statements may be admissible pursuant to an exception to the rule against hearsay or for a purpose other than the truth of the matter asserted.

The Court further rejects Plaintiff's argument that the declaration should be rejected as a sham affidavit, based on late disclosure or because the declarant's personal contact information was disclosed belatedly.  The First Circuit's "sham affidavit rule" provides that if "an interested witness has given clear answers to unambiguous questions [at deposition], he cannot create a conflict and resist summary judgment with an affidavit that is clearly contradictory, but does not give a satisfactory explanation of why the testimony is changed."  Flaherty v. Entergy Nuclear Operations, Inc., 946 F.3d 41, 50 (1st Cir. 2019) (alteration in original) (quoting Colantuoni v. Alfred Calcagni & Sons, Inc., 44 F.3d 1, 4–5 (1st Cir. 1994)).  That rule does not apply here as the declarant, Pangoras, cannot be said to be contradicting his prior deposition testimony where he was not deposed.  As for the timeliness of the disclosure of Pangoras's opinions, although his areas of knowledge and information were disclosed fairly late in the discovery process in November 2021, see [ECF No. 102-1 at 14, 17, 21, 33, 40], fact discovery did not close until January 21, 2022, see [ECF No. 86].  Plaintiff seeks to make an issue of the fact that Pangoras's personal contact information was not disclosed until after the close of discovery, but, prior to the end of discovery, in November 2021, Defendants disclosed what they believed to be his current employer and associated business address.  The Court finds that Defendants' disclosure of

Pangoras's name, areas of knowledge, and the identity of his employer, as then understood by Defendants, was sufficient to permit Plaintiff to conduct an investigation to verify the statements in Pangoras's declaration.

Finding that Plaintiff's arguments are unavailing and because his request is procedurally improper, the request to strike is <u>DENIED</u>.

## IV.   MOTIONS FOR SUMMARY JUDGMENT

### A.   Legal Standard

Summary judgment is appropriate where the moving party can show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "[A]n issue is 'genuine' if it 'may reasonably be resolved in favor of either party.'" <u>Robinson v. Cook</u>, 863 F. Supp. 2d 49, 60 (D. Mass. 2012) (alteration in original) (quoting <u>Vineberg v. Bissonnette</u>, 548 F.3d 50, 56 (1st Cir. 2008)).  "A fact is material if its resolution might affect the outcome of the case under the controlling law." <u>Cochran v. Quest Software, Inc.</u>, 328 F.3d 1, 6 (1st Cir. 2003) (citation omitted).  Thus, "[a] genuine issue exists as to such a fact if there is evidence from which a reasonable trier could decide the fact either way." <u>Id.</u> (citation omitted).  By invoking summary judgment, "the moving party in effect declares that the evidence is insufficient to support the nonmoving party's case." <u>United States v. Plat 20, Lot 17</u>, 960 F.2d 200, 204 (1st Cir. 1992) (citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325 (1986)).

"To succeed in showing that there is no genuine dispute of material fact, the moving party must . . . 'affirmatively produce evidence that negates an essential element of the non-moving party's claim,' or, using 'evidentiary materials already on file . . . demonstrate that the non-moving party will be unable to carry its burden of persuasion at trial.'" <u>Ocasio-Hernández</u>

11

v. Fortuño-Burset, 777 F.3d 1, 4–5 (1st Cir. 2015) (second omission in original) (quoting Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir. 2000)).  Conversely, "[t]o defeat a properly supported motion for summary judgment, the nonmoving party must establish a trial-worthy issue by presenting enough competent evidence to enable a finding favorable to the nonmoving party."  ATC Realty, LLC v. Town of Kingston, 303 F.3d 91, 94 (1st Cir. 2002) (internal quotation marks and citation omitted).  That is, the nonmoving party must set forth specific, material evidence showing that there is "a genuine disagreement as to some material fact."  Plat 20, Lot 17, 960 F.2d at 204 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986)) (further citation omitted).

In reviewing the record, the Court "must take the evidence in the light most flattering to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." Cochran, 328 F.3d at 6.  The First Circuit has noted that this review "is favorable to the nonmoving party, but it does not give him a free pass to trial."  Hannon v. Beard, 645 F.3d 45, 48 (1st Cir. 2011).  "The factual conflicts upon which he relies must be both genuine and material[,]" Gomez v. Stop & Shop Supermarket Co., 670 F.3d 395, 397 (1st Cir. 2012), and the Court may discount "conclusory allegations, improbable inferences, and unsupported speculation[,]" Cochran, 328 F.3d at 6 (quoting Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990)).  Further, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."  Anderson, 477 U.S. at 252.

**B.      Chapter 93A Claim**

Chapter 93A prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce."  Mass. Gen. Laws ch. 93A, § 2.  In order to recover, a plaintiff must prove that "a

person who is engaged in trade or business committed an unfair or deceptive trade practice and that the claimant suffered a loss of money or property as a result." Bowers v. Baystate Techs., Inc., 101 F. Supp. 2d 53, 54 (D. Mass. 2000). "Although whether a particular set of acts, in their factual setting, is unfair or deceptive is a question of fact . . . the boundaries of what may qualify for consideration as a [Chapter] 93A violation is a question of law." Milliken & Co. v. Duro Textiles, LLC, 887 N.E.2d 244, 259 (Mass. 2008) (omission in original) (citation omitted). "[A]n act or practice is unfair if it falls 'within at least the penumbra of some common-law, statutory, or other established concept of unfairness'; 'is immoral, unethical, oppressive, or unscrupulous'; and 'causes substantial injury to consumers.'" Walsh v. TelTech Sys., Inc., 821 F.3d 155, 160 (1st Cir. 2016) (quoting PMP Assocs. v. Globe Newspaper Co., 321 N.E.2d 915, 917 (Mass. 1975)). "To rise to the level of an 'unfair' act or practice, the defendant's conduct must generally be of an egregious, non-negligent nature." Id. (citing Baker v. Goldman, Sachs & Co., 771 F.3d 37, 51 (1st Cir. 2014)). A practice is deceptive "if it 'could reasonably be found to have caused a person to act differently from the way he or she otherwise would have acted.'" Aspinall v. Philip Morris Cos., Inc., 813 N.E.2d 476, 486 (Mass. 2004) (brackets omitted) (quoting Purity Supreme, Inc. v. Att'y Gen., 407 N.E.2d 297, 307 (Mass. 1980)).

Plaintiff first contends that Defendants' use of coinless TRUs is unfair because it "violates express requirements" in (1) Massachusetts gaming regulations, (2) industry standards that have been codified in Massachusetts gaming regulations, and (3) Defendants' internal controls. [ECF No. 109 at 13]. Plaintiff asserts that each of these authorities requires Defendants to "disburse all funds, in full, to the customer at the TRUs." [Id. at 13].

The Court begins with Plaintiff's argument that the use of coinless TRUs violates industry standards promulgated by Gaming Laboratories International, LLC ("GLI") which are

13

incorporated into the Massachusetts gaming regulations.  More specifically, he asserts that Defendants' coinless TRUs violate the Commonwealth's gaming regulations codified at 205 Mass. Code Regs. §§ 138.51 and 143.01(1), because, he alleges, those regulations require that Encore's internal controls related to TRUs comply with GLI standards set forth in GLI-11 (version 3.0), § 2.17 which "require[s] disbursement of all available credits to the customer at any point on demand."  [ECF No. 109 at 14].  This argument is fatally flawed for several reasons.

First, the plain language of Section 2.17 does not mandate that a machine dispense all funds in cash or coin at any time as Plaintiff suggests.  Rather, Section 2.17 states that "[a]vailable credits *may* be collected from the gaming device by the player pressing a collect or cash out button at any time other than during [certain excluded events]."  GLI-11 § 2.17.1 (emphasis added).  Moreover, for reasons discussed below, even if Section 2.17 applied to Encore's TRUs the record does not support a finding that TRUs dispensing cash and a TRU ticket violated Section 2.17.1.  See infra pp. 14–19.  Plaintiff's interpretation of the regulation is further undermined by the following section, Section 2.18, which expressly permits payment by voucher.  GLI-11 § 2.18.1.

Second, Plaintiff is wrong that Defendants' operation of TRUs are subject to GLI-11. GLI-11, the standard that governs gaming devices, states as follows: "[a]t a minimum, a gaming device utilizes an element of chance and/or skill in determination of prizes, contains some form of activation to initiate the wagering process, and makes use of a suitable methodology for delivery of the determined outcome."  GLI-11, § 1.5.1.  A TRU, unlike a slot machine, does not meet that definition.  Therefore, even if GLI-11 did mandate that a gaming device machine needed to pay out all funds in cash and coin—which it does not—that policy would not apply to

Encore's TRUs.  The GLI standard adopted by the Commonwealth relative to the operation of TRUs is GLI-20 (version 1.5), 205 Mass. Code Regs. § 143.07.  GLI-20 applies to kiosks, such as TRUs, which are defined as performing various tasks including, but not limited to "Ticket/Voucher/Coupon Redemption."  GLI-20, § 1.1.1(a).  GLI-20 does not require that redemption kiosks, like Encore's TRUs, dispense both cash and coin and, in fact, expressly states that "[i]f the Kiosk has a printer that is used to make payments, the kiosk may pay the player by issuing a printed ticket/voucher."  GLI-20, § 3.8.1.  Also relevant here, § 3.10.1 of GLI-20 states that "[a] ticket/voucher can be generated at a kiosk through an internal printer.  Ticket/vouchers that reflect partial credits may be issued automatically from a kiosk.  Additionally, cashier/change booth issuance is permitted, if supported by the validation system."  See also GLI-20, § 1.1.1(c) ("When the ticket/voucher printed by the kiosk is redeemed at a gaming device, cashiers cage or kiosk, the system must change the 'Pending' status of the ticket/voucher to 'Redeemed'.").  In other words, the Commonwealth's gaming regulations, which adopt GLI-20 as it applies to kiosks, including TRUs, expressly contemplate the redemption system employed at Encore.  See 205 Mass. Code Regs. § 143.07.

Next, Plaintiff contends that Encore's internal controls require its TRUs to dispense both cash and coin.  In pertinent part, the internal controls state that when a gaming voucher is inserted into the TRU, "if valid, the TRU dispenses to the patron the appropriate amount of funds and the gaming voucher is electronically noted 'redeemed' in the system."  [ECF No. 102-18 at 2].  Plaintiff thus appears to be arguing that a TRU dispensing cash and a TRU ticket for the remaining change fails to dispense the appropriate amount of funds or, alternatively, that there is at least a dispute on this point.  The Court disagrees.  In the Commonwealth's gaming regulations, funds are described as including, but not necessarily limited to, "currency, a gaming

voucher, or a coupon," <u>see, e.g.</u>, 205 Mass. Code Regs. § 138.33(7), and moreover, the

applicable state regulation, 205 Mass. Code Regs. § 143.07, which incorporates GLI-20 by

reference, specifically permits TRUs to pay patrons with a ticket that can be redeemed at a

cashier cage.  <u>See</u> GLI-20, §§ 1.1.1(c); 3.10.1.  Therefore, when the internal controls are read in

the context of the applicable regulations and standards, it is apparent that a TRU can dispense

"the appropriate amount of funds" by dispensing cash and a TRU ticket that can be redeemed at

a cashier window or used for further gaming.[6]

Having concluded that Encore's coinless TRUs do not fall under any common-law,

statutory, or other established concept of unfairness, the Court next turns to Plaintiff's argument

that the practice is "immoral, unethical, and unscrupulous" because very few tickets are

redeemed at the cashier and "[b]y keeping the coins, Wynn has enabled undesirable wagering."

[ECF No. 109 at 14].  The Court, as legal gatekeeper, finds that the record provides no basis to

permit Plaintiff to prevail on this argument.  When determining whether conduct qualifies as

immoral, unethical, and unscrupulous, courts have examined whether the defendant influenced a

plaintiff to take an action that was disadvantageous or gave them misleading information.  <u>See,</u>

<u>e.g.</u>, <u>Fernandes v. Havkin</u>, 731 F. Supp. 2d 103, 117 (D. Mass. 2010) (considering whether

defendant induced plaintiff into entering a bad mortgage by providing misleading information);

<u>Regal v. Wells Fargo Bank, N.A.</u>, 205 F. Supp. 3d 195, 204 (D. Mass. 2016) (concluding that

defendant's failure to provide notice to plaintiff was not an "artifice designed to get the better of

---

[6] The Court's conclusion that there is no genuine dispute as to whether TRUs dispensing cash
and a TRU ticket violate the internal controls is bolstered by the fact that the IEB was aware of
Encore's coinless TRUs and did not issue a cease and desist order despite the requirement that
IEB issue such an order if it "finds that a licensee has engaged in or is about to engage in an act
or practice which constitutes a violation of [the Gaming Act] or any other laws of the
commonwealth . . . ."  Mass. Gen. Laws ch. 23K, § 35(e).

the consumer" and therefore not "inherently immoral, unethical, oppressive, or unscrupulous").
The parties agree that neither Plaintiff nor any other customer was instructed to use TRU tickets
to continue playing on slot machines or otherwise misled or given misleading information about
how the TRU tickets could be used or redeemed.  Plaintiff further admits that he never asked any
employees how the TRU tickets could be redeemed and discovered on his own that they could be
used to continue playing slots by inserting them into slot machines.  Even assuming that the TRU
tickets did not contain affirmative information instructing patrons to redeem the tickets at a
cashier window, a point which is contested, such an omission cannot be construed as a deceptive
or misleading statement under the circumstances presented here.[7]

Plaintiff alternatively argues that the coinless TRUs reflect a deceptive business practice,
but the Court again disagrees.  A practice is deceptive "if it 'could reasonably be found to have
caused a person to act differently from the way he or she otherwise would have acted.'"
Aspinall, 813 N.E.2d at 486 (brackets omitted) (quoting Purity Supreme, 407 N.E.2d at 307).
Plaintiff asserts that Defendants acted deceptively "by failing to provide instructions [on the

---

[7] The Court notes that Plaintiff has also moved to supplement the summary judgment record to
include (1) "CASHOUT VOUCHER[S]" that Plaintiff asserts were printed out by slot machines
he played on a visit to Encore that lasted from August 19, 2022 to August 21, 2022, and (2) a
copy of what Plaintiff asserts is a TRU ticket that he received during the August 2022 visit.
[ECF No. 116].  The purported TRU ticket from the August 2022 visit does not instruct patrons
to take the voucher to a cashier window or otherwise explain how the ticket can be redeemed.
The Court infers that Plaintiff is seeking to include this ticket in the record to bolster his
argument that there is a genuine dispute regarding whether the TRU tickets he received on his
first visit to Encore in July 2019 included similar instructions.  In considering Defendants'
motion for summary judgment, the Court assumed, without finding, that there was a genuine
dispute of fact as to the contents of the TRU tickets Plaintiff received on his first visit.
Therefore, even if the Court granted Plaintiff's motion to supplement the record, doing so would
have no effect on the Court's reasoning set forth in this order.  Nonetheless, the Court DENIES
Plaintiff's request to supplement the record as it is untimely.  See SRI Int'l, Inc. v. Cisco Sys.,
Inc., 930 F.3d 1295, 1311–12 (Fed. Cir. 2019) (holding that district court did not abuse its
discretion in denying motion to supplement record where motion to supplement was filed after
completion of the pending motion).

TRU tickets] on how to obtain the balance."  [ECF No. 56 ¶ 94 ("Am. Compl.")].  The Court easily finds, as a matter of law, that no factfinder could find that this alleged omission was deceptive because Plaintiff admits that even after he learned that he could redeem the tickets at the cashier window, he nonetheless continued to either throw the tickets in the trash or to use them to continue to play on the slot machines and that he never once attempted to redeem them at a cashier window.  [ECF No. 110 ¶¶ 69–75].  In other words, even at the point when Plaintiff admits he had the information he now argues should have been included on the tickets, the allegedly omitted information did not change his behavior, and therefore, his argument that but-for the omission he would have acted differently fails.

Plaintiff's sole remaining argument is that simply having coinless TRU machines was inherently deceptive.  "The spectrum of liability for deceptive acts or practices spans from affirmative misrepresentations to certain kinds of nondisclosures, such as 'advertising [that] may consist of a half truth, or even may be true as a literal matter, but still create[s] an over-all misleading impression through failure to disclose material information."  Tomasella v. Nestlé USA, Inc., 962 F.3d 60, 71 (1st Cir. 2020) (internal citation omitted) (brackets in original) (quoting Aspinall, 813 N.E.2d at 487).  Although this standard does not map perfectly onto the facts at hand, the Court nonetheless concludes that the mere use of coinless TRUs does not constitute a deceptive practice as a matter of law.

As relevant here, the parties agree that Defendants did not make any misrepresentations to Plaintiff or other patrons about their ability to redeem the TRU tickets for coins.  The question therefore is whether providing patrons with a redeemable ticket, rather than coins, is deceptive.  Based on the record before it, the Court finds that no factfinder could reasonably conclude that the mere act of providing a ticket in lieu of coins is deceptive in the context of a 93A claim.  The

parties agree that the TRU tickets Plaintiff received reflected whatever amount was not dispensed to him in cash, *i.e.*, the leftover change.  A person receiving a ticket that, on its face, states that it is worth some number of cents—which Plaintiff admits to understanding—would reasonably be expected to understand that the ticket could be redeemed for that value.  And it would verge on unreasonable for a person receiving such a ticket in a casino to conclude that this value was unredeemable.

Having found that Defendants' use of coinless TRUs was neither unfair nor deceptive, Defendants' motion for summary judgment is <u>GRANTED</u> as to Plaintiff's Chapter 93A claim.

### C.        Breach of Contract & Promissory Estoppel

"To succeed on a breach of contract action, [P]laintiff must prove (1) an offer, (2) an acceptance, (3) consideration, (4) breach and (5) damages."  <u>Hannigan v. Bank of America, N.A.</u>, 48 F. Supp. 3d 135, 140 (D. Mass. 2014) (citing <u>Canney v. New England Tel. & Tel. Co.</u>, 228 N.E.2d 723, 728 (Mass. 1967)).  Plaintiff alleges that he and members of the putative class "entered into a contract with Encore to make slot wagers with the understanding that all credits remaining on the slot machine could be redeemed in full at the player's sole option."  [Am. Compl. ¶ 71].  In particular, Plaintiff contends that Defendants breached that contract "by failing to refund all slot credits in full."  [<u>Id.</u> ¶ 74].  In his opposition to Defendants' motion for summary judgment, Plaintiff argues that "[a] customer who plays slots at Encore has the right to cash out at any point in time and monetize the remaining credits on the slot machine's meter[,]" [ECF No. 109 at 25], and asserts that this purported agreement is codified by law and in Encore's internal controls, [<u>id.</u>].  To support his assertion that a customer has a right to cash out at any time and immediately monetize the remaining credits, Plaintiff cites to Paragraph 85 of his

responsive statement of facts, but Paragraph 85 does not pertain to Encore specifically.

Paragraphs 84 and 85 of Plaintiff's responsive statement of facts state that

> [a]s technology advanced, slot machines were created to include bill validators and credit meters.  Instead of wagering coins, a player could insert a $20.00 bill, receive 80 credits (worth $0.25 each) on an electronic meter, and make numerous wagers before needing to make an additional deposit.  In order to retrieve the funds from a game with a credit meter, the player needed to press a 'cash out button.

> The player could cash out at any time and receive the entire value on the credit meter.

[ECF No. 110 ¶¶ 84–85 (internal citations omitted)].  Because these paragraphs say nothing about any alleged promise made by Encore, the Court finds that Plaintiff's argument lacks record support.  Moreover, to the extent that Plaintiff argues that Defendants were obligated by law or by their internal controls to utilize TRUs that dispensed cash and coins as opposed to cash and a ticket, that argument, as discussed above, is not supported by the regulations promulgated pursuant to the Gaming Act or the internal controls.

Plaintiff appears to want to read into his purported contract with Encore a temporal element with respect to when he was entitled to redeem the value of his slot machine ticket.  In his view, the contract gave Plaintiff the right to redeem the entire value of his slot machine ticket all at once at the time he inserted the ticket into the TRU.  The record, however, provides no support for that interpretation.  Rather, the undisputed evidence reflects that Plaintiff could in fact redeem the full value of his slot machine ticket but that doing so required first inserting the ticket into a TRU, taking the cash and TRU ticket that dispensed, and then redeeming the value of the TRU ticket at a cashier window.  While Plaintiff might view this process as overly burdensome, there is no evidence that Defendants promised a more efficient process and Plaintiff's breach of contract claim thus fails.

Plaintiff's promissory estoppel claim fails for the same reasons. "An essential element under the promissory estoppel theory is that there be an unambiguous promise and that the party to whom the promise was made reasonably relied on the representation." Egan v. Tenet Health Care, 193 F. Supp. 3d 73, 86 (D. Mass. 2016) (quoting R.I. Hosp. Tr. Nat'l Bank v. Varadian, 647 N.E.2d 1174, 1178 (Mass. 1995)). For the reasons discussed above, the Court finds that no factfinder could reasonably conclude that Defendants made an unambiguous promise to Plaintiff or other customers to pay out slot machine tickets in cash and coin at the TRUs.

Defendants are therefore also entitled to summary judgment on Plaintiff's breach of contract and promissory estoppel claims.

### D.      Conversion

Plaintiff alleges that Defendants are liable for conversion. Under Massachusetts law, a plaintiff asserting a conversion claim must demonstrate that

> (1) the defendant intentionally and wrongfully exercised control or dominion over the personal property; (2) the plaintiff had an ownership or possessory interest in the property at the time of the alleged conversion; (3) the plaintiff was damaged by the defendant's conduct; and (4) if the defendant legitimately acquired possession of the property under a good-faith claim of right, the plaintiff's demand for its return was refused.

Dialogo, LLC v. Bauza, 456 F. Supp. 2d 219, 226–27 (D. Mass. 2006) (quoting Evergreen Marine Corp. v. Six Consignments of Frozen Scallops, 4 F.3d 90, 95 (1st Cir.1993) (citations omitted)). Without citation, Plaintiff contends in his opposition that when he demanded the return of his monies, Defendants refused and thereby converted his coins. [ECF No 109 at 26]. This, however, misconstrues the record and defies logic. As previously discussed, it is undisputed that when Plaintiff inserted slot machine tickets into Encore's TRUs, the machines would dispense cash up to the nearest whole-dollar value of the slot machine ticket and then print and dispense a TRU ticket that reflected the remaining value of the slot machine ticket, which

was less than $1.  The dispensing of a ticket that could be redeemed at a cashier window or be used to continue playing on a slot machine cannot be reasonably construed as a refusal to pay Plaintiff what he was owed.  Rather, Encore's TRU machines returned to Plaintiff the value of his slot machine ticket in cash and by ticket and then left it to Plaintiff to redeem, use, or discard the amount of change shown on the ticket.  That Plaintiff, by his own admission, chose to throw some of those tickets in the trash and use others to continue gambling does not give rise to a claim for conversion.  The Court therefore <u>GRANTS</u> Defendants' motion for summary judgment on Plaintiff's claim for conversion.  Because the Court grants summary judgement to Defendants on all claims, Plaintiff's motion for class certification is <u>DENIED</u> as moot.

## V.     CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment, [ECF No. 97], is <u>GRANTED</u> and Plaintiff's motion for class certification, [ECF No. 98], is <u>DENIED</u> as moot. The Court further <u>DENIES</u> Plaintiff's request to strike the Pangoras Declaration, [ECF No. 109 at 7 n.4], and his motion to supplement the record, [ECF No. 116].

**SO ORDERED.**

February 27, 2023

/s/ Allison D. Burroughs
ALLISON D. BURROUGHS
 U.S. DISTRICT JUDGE
